## RICE vs. HARRELL.

The plaintiff must recover on the strength of his own title, and not on the weakness of that of the defendant.

The proper construction of *sec.* 10, *art.* 6, *ch.* 101, *Gould's Dig.*, is that as to lands which were subject to entry, at the date of the act, and which the state desired to put upon the market at an early period, persons were allowed to make improvements upon them, and file their declarations and supporting affidavits in the office of the land agent, at any time within sixty days after the passage of the act; and as to the lands unconfirmed at the date of the act, persons were allowed to make improvements upon them, and file their declarations and affidavits at any time within sixty days after such lands were advertised for sale by the land agent.

A state land agent being a public officer acting under his official oath, in the discharge of his official duties, is presumed to have acted in conformity with the law, in the absence of any showing to the contrary.

When a fact is charged in the bill inferentially, and not directly, although on demurrer filed in proper time, the court might have sustained the demurrer, and ordered the bill to be amended, yet it would be unjust to dismiss the bill at the hearing for the want of such direct allegation.

The defendant having filed in the office of the land agent his declaration supported by affidavits, claiming a pre-emption to certain lands not now in controversy, his attorney afterwards, by permission of the land agent, erased the description of the lands in the declaration and affidavits, and inserted in lieu thereof the land in controversy: *Held*, that the affidavits in their altered state could have no legal effect, not having been sworn to; and that the sale made upon them by the land agent was unauthorized by law.

The making and filing the proper declaration and affidavits in the office of the land agent within the time limited are legal prerequisites to a valid sale of the land by pre-emption.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

Opinion prepared by E. H. ENGLISH, Esq.—*See note page* VIII.

John Q. Rice sought, by bill in the Pulaski chancery court, to establish an equitable title to a tract of swamp land, described in the public surveys as the *north-east quarter of the south-west quarter of section thirty-two in township two south, range ten west,* containing *forty acres:* and to cancel a certificate of entry obtained by John M. Harrell from the land agent of the Little Rock district, for the same tract of land, or to obtain, by decree, the benefit of Harrell's entry.

The cause was heard upon the pleadings and evidence, and the chancellor dismissed the bill for want of equity, and Rice appealed.

It must first be determined whether Rice has established his right to the land, for, as well remarked by the chancellor, if he has no title, he stands in no attitude to impeach the legality of Harrell's entry, or to obtain the benefit of it.

On and after the 28th of March, 1859, Rice, intending to secure a pre-emption, made an improvement upon, and put in cultivation a part of the land in controversy. On the 6th of April following, he made a declaration in writing, sworn to before a justice of the peace, setting forth the facts upon which he claimed a pre-emption; and, on the same day, he procured two witnesses to make affidavits before the same justice in proof of his claim.

On the 25th of April, 1859, he filed in the office of the land agent this declaration, and these affidavits, and offered to enter the land, but Harrell had been permitted to enter it, on a claim of pre-emption, two days before.

The chancellor supposing Rice's claim of pre-emption to rest upon *section* 10, *article VI, chapter* 101, *Gould's Digest, page* 721, held it to be invalid because his improvement upon the land was made after, and not before, the land agent had advertised the swamp lands of his district for public sale, etc.

The answer of Harrell did not attack the title of Rice on that ground. The date of the advertisement is not alleged in the bill or answer, and is not proven with accuracy by any of the depositions; but it is to be inferred, and may be assumed to be true, from the allegations of the bill, that Rice made his improvement upon the land after the publication of the advertisement.

The opinion of the chancellor was based upon a literal and narrow construction of the language of the single section of the pre-emption statutes above referred to. It provides that: "Any head of a family, or other free white citizen of the state of Arkansas, over the age of twenty-one years, who has an improvement on any of the swamp and overflowed lands, who shall, within sixty days after such lands are advertised by the land agent of the proper district, under the provisions of sections two and three, after such lands shall have been reported by the local agents, or if the same is now subject to entry, within sixty days from and after the passage of this act, file his or her declaration in writing, setting forth the fact that he or she claims said tract of land to be described in such declaration, as a pre-emption right, under the provisions of this act, with the land agent of the district in which such lands are, shall be entitled to a pre-emption for the term of twelve months from and after the time of filing said declaration," etc.

"Any head of a family etc., who *has* an improvement" etc. If the word "*has*," as used in this sentence, is to be understood in a literal and restricted sense, being in the present tense, it applies to the time of the passage of the act, and not to the date of the future advertisement to be made by the land agent, or to the time of any other subsequent event. And this construction would cut off all persons from the benefit of the statute, except such as had made improvements upon the lands prior to its passage.

But such construction would not be in harmony with the general policy of our pre-emption statutes, or, we think, with the spirit of the act in question.

After the swamp and overflowed lands were granted to the state, the legislature pursuing the policy which had been adopted by congress, repeatedly offered inducements to the settlement and improvement of the public lands, by acts granting and protecting pre-emption rights.

Thus, by the 13th section of the act of 6th January, 1851, the first act passed by the legislature for the disposal of the swamp lands after they were granted to the state, pre-emption rights existing under acts of congress were preserved: and to persons "who shall reside on or who shall have improved" such lands, the "exclusive right of purchase," was given for the period of twelve months from and after the date of the patents to be issued to the state by the United States.

And by the act of 12th January, 1853, every head of a family who was then a settler upon, or who might thereafter settle upon, any of the undisposed swamp lands, was given a pre-emption right thereto up to the day of public sale.

So, the 14th section of the act of 15th January, 1857, declares that, "Any person who resides on, or who may hereafter reside on, reclaim, or cultivate any of the swamp or overflowed lands which may be confirmed to the state, should have a pre-emption right to 160 acres, to be proved up according to existing laws," etc.

Thus the policy of granting and protecting pre-emption rights, as rewards for, or inducements to settlement, improvement and cultivation of the wild public lands, appears to have been a permanent and continuing policy—each act limiting the time in which such rights were to be asserted; some of them fixing the day of public sale as the period of limitation, and others (like that which we are now considering) sixty days after publication of the notice of sale.

We can see no good reason why the legislature should have intended to depart from the general policy of the pre-emption system, in framing the act in question, by granting the right of pre-emption to persons who had made improvements prior to its passage, and denying to persons subsequently improving, within the periods limited by the act, the benefit of pre-emption.

We think the more reasonable construction of the act is, that as to lands which were subject to entry at the date of the act, and which the state desired to put upon the public market at an early period, persons were allowed to make improvements upon them, and file their declarations and supporting affidavits in the office of the land agent at any time within sixty days after the passage of the act; and as to lands unconfirmed at the date of the act, persons were allowed to make improvements upon them, and file their declarations and affidavits at any time within sixty days after such lands were advertised for sale by the land agent. If persons could continue to make pre-emption improvements upon these lands after the passage of the act up to the date of the advertisement, as seems to have been conceded by the chancellor, we can perceive no good reason why they should not have been permitted to continue to make such improvements and file their declarations and proof up to the conclusion of the period of sixty days during which the public notice of the time fixed for the sale of the lands, by the land agent, was to continue.

But if this construction of the act should be regarded as doubtful, Rice made out his right of pre-emption to the land in question, under the act of 13th January, 1857, sec. 14, ( Gould's Dig., art. 6, sec. 15, chap. 101, p. 772,) which declares, as above shown, that "Any person who resides on, or may hereafter reside on, reclaim, or cultivate any of the swamp or overflowed lands which may be confirmed to the state, shall have a pre-emption right to one hundred and sixty acres, to be proved up according to existing laws," etc. Rice alleges in his bill, and the proof shows, that he had a part of the land in question in cultivation at the time he made his declaration and filed his supporting affidavits in the office of the land agent. It is true that the cultivation, as well as the improvement, was limited, but one of the witnesses deposed, and no doubt truthfully, that they were such as were usually made by pre-emptors: and doubtless in this, as in most instances, which have come before us, the letter rather than the spirit of the pre-emption acts has been observed. (As to the right of Rice

to a pre-emption under the act last above referred to, see *Woodruff vs. Core*, 23 *Ark.*, 341.)

The chancellor was also of the opinion that Rice failed to make out his case, by omitting to allege in his bill that his pre-emption claim was filed in the land office within sixty days from the date of the advertisement.

It is true that this is not directly alleged as such a material fact should have been. But the bill alleges that on and after the 28th March, 1859, Rice made his improvement and cultivation upon the land. That on the 6th of April following, intending to avail himself of the benefit of the pre-emption laws, the declaration was prepared, and the supporting affidavits made before a justice of the peace, and then the bill proceeds to allege : "that your orator having plenty of time within which to file the said declaration and affidavits in the office of the land agent for the Little Rock district, was not in a very great hurry to do so, *it being considerably more than a month before the day appointed by said land agent for the public sale of said land*, and therefore he did not file the same until the 25th day of April, A. D. 1859, as will appear by reference to exhibit A." (Exhibit A was the declaration, affidavits and file endorsement of the land agent.)

The law required the public sale to be made on the first Monday after the expiration of the sixty days from the date of the advertisement, and it must be presumed that the land agent, acting under his official oath in the discharge of official duties, fixed the day of sale in conformity with the law, in the absence of any showing to the contrary.

The first Monday after the expiration of sixty days from the date of the advertisement being fixed as the day of sale, and it being *considerably more than a month* from the 6th of April, the day on which the declaration and affidavits were made, to the day of sale, and the declaration and affidavits having been filed in the office of the land agent on the 25th of April, it necessarily follows that they were filed within sixty days from the date of the advertisement.

Had Harrell demurred to the bill on the grounds that the material fact in question was alleged inferentially and not directly, and insisted upon the demurrer at the proper time, the court might properly have sustained the objection, and ordered an amendment of the bill. But Harrell answered the whole bill, without controverting the filing of Rice's pre-emption claim in time, and in the conclusion of the answer interposed a demurrer in general terms for want of equity, craving leave, in the usual form, of insisting upon the demurrer at the final hearing.

We think it would be unjust and an unusual practice to dismiss a bill for want of equity at the final hearing, upon such a demurrer, for a defective allegation like the one in question, and put the complainant to the delay and expense of a new suit.

It is manifest, we think, from the pleadings and proof that Rice filed his application to enter the land in question by pre-emption within the time required by law: and it remains to consider the validity of the opposing title of Harrell.

On the 23d of March, 1859, Harrell filed in the office of the land agent his declaration supported by his affidavit, and the affidavits of two witnesses, stating that he had made an improvement upon, and claimed to enter by pre-emption, the *south half of the north-east quarter, and the north half of the south-east quarter of section thirty-two, in township two south, range ten west,* containing one hundred and sixty acres.

It will be observed that the land in controversy was not included in these affidavits.

On the 23d of April, 1859, Matheny, the attorney of Harrell, went to the land office, and by permission of the land agent, erased from the declaration and affidavits the lands above described and inserted in lieu thereof, "The *south half of the north-east quarter, and the north-east quarter of the south-west quarter, and the north-west quarter of the south-east quarter of section 32, township 2 south, range 10 west,* 160 acres."

It will be observed that the declaration and affidavits, as amended, omitted one of the forty acre tracts of land embraced

by them when made and filed in the office, and included in lieu thereof the tract of land in controversy.

Neither Harrell nor the witnesses were present when [this change was made in the declaration and affidavits. Harrell[had in fact, at that time, no improvement on the tract of land in controversy, and one of his witnesses had made an affidavit to prove Rice's improvement.

Upon the declaration and affidavits so altered, and without their being again sworn to, the land agent permitted Harrell to enter the land by pre-emption, and issued to him a certificate of entry.

The affidavits, in their altered form, can have no legal effect. The new state of facts inserted in them was never sworn to by the affiants. They must be regarded, for the purposes of this suit, as remaining as they originally were when made and filed in the land office.

So treating the affidavits, it follows that the land agent permitted Harrell to enter the land in controversy by pre-emption, without the declaration and affidavits required by law, that he had an improvement thereon, etc.

The sale so made was unauthorized by law. The statute provides : " that the land agents shall have full power and authority to sell any of the swamp and overflowed lands, but in making such sales, shall be govered by the rules, provisions and regulations now in force and hereafter provided, or which may exist by law at the time of such sale." *Act of 12th January*, 1853, *sec.* 7 ; *Act of 30th December*, 1856, *sec.* 2.

The making and filing of the proper declaration and affidavits in the office of the land agent, within the time limited, were legal pre-requisites to a valid sale of the land by pre-emption. Without them the land agent had no legal power to make such sale.

As remarked by this court in *Cheatham vs. Phillips*, 23 *Ark.*, 87, the swamp lands belonged to the state. The title to them is not in the land agent; they derive their power to sell them from

the statutes, and have to follow their requirements in order to make valid sales.

. It is true, as remarked by the chancellor, that no fraud is attributable to Harrell in the change of the affidavits. It appears that after they were filed in the land office, Harrell concluded to abandon one of the tracts described in them, and to claim the land in controversy by pre-emption, and instructed Matheny to withdraw the application and affidavits from the land office, and make out a new application, etc.; but Matheny, by permission of the land agent, took the shorter mode, and made the change in the original papers above described.

But it is not a question of fraud, but a question of power in the land agent to make a sale of land by pre-emption without a compliance with the material provisions of the law from which he derives his authority to sell.

The decree of the court below must be reversed, and the cause remanded with instructions to render a decree in favor of Rice as prayed by the bill.