WILLEFORD ET AL V. STATE EX. REL., &C.

1.  MANDAMUS: *When proper remedy.*
    Mandamus is an appropriate remedy where a public officer is called upon to perform a plain and specific public duty positively required by law, calling for the exercise of no discretion or official judgment.

2.  ELECTIONS ; *Duty of canvassing boards.*
    The duties of canvassing boards are purely ministerial. They have no judicial functions and no discretionary power to go behind the returns for any purpose.

Willeford et al v. State Ex. Rel., &c.

3. SAME; *Manner of conducting elections*: *Statute directory.*

The board of canvassers can not reject a poll-book on account of its being transmitted to the clerk through one not an elective officer. Statutes concerning the manner of conducting elections are directory, unless a non-compliance is expressly declared to be fatal to the validity of the election, or will change or make doubtful the result.

4. ELECTION OF COUNTY SEAT; *Jurisdiction of Chancery*: *of County Court: Appeal.*

Chancery has no power to restrain the counting of votes in a County seat election, for fraud or illegality. The jurisdiction is in the County Court to purge the polls of fraudulent and illegal votes, as an incident to its exclusive jurisdiction over all matters pertaining to the local concerns of the county; and from its decision any person aggrieved may appeal to the circuit court.

5 INJUNCTION: *Issued without authority void.*

A writ of injunction issued in a matter over which the court has no jurisdiction is void, and no one is bound to obey it.

APPEAL from *Prairie* Circuit Court.

Hon. M. T. SAUNDERS, Circuit Judge.

*J. E. Gatewood* and *S. P. Hughes* for appellants.

Poll books must be returned by judge of election. *Secs.* 41, 42, 43, &c., *Acts* 1875, *p.* 100. The statute is mandatory, *McCrary on Elections, Secs.* 199–200.

The board of canvassers may determine whether what purports to be, *are* the returns, *Ib., Sec.* 82. Proof of genuineness of returns transmitted through private and unauthorized channels. *Ib., Secs.* 160, 441–2–3. In determining whether returns are genuine and ought to be opened and compared, canvassing boards act in a *quasi* judicial character, and are not to be controlled by mandamus. *Ib., Secs.* 331, 333; 3 *Kans.* 88.

If there is no mode for contesting an election for removing a county seat, then there is no remedy at law against the 85 fraudulent votes cast at Hazen, and injunction was proper.

There is no mode of contesting such an election, and in all cases where it has been held equity would not restrain the count of a vote, there was a remedy at law. *McCrary, Secs.* 220, 340, 318, 319; 41 *Pa. St.*, 396; 17 *Ohio St. Rock v. Weddle*; 14 *Ohio St.* 315; *Mosely v. Mack* 30 *Ark.*, 485.

Where no contest is provided for, injunction is the remedy. 48 *Ill.*, 263; 77 *Ib.*, 485. See election laws 1875, *Acts* 1875 *p.* 107, *Secs.* 76–7, 71 *p.* 106 and *p.* 83 *Act* 1883, prescribing *modes* of contests for officers. Also *Story Eq., Secs.* 26, 27 *and* 33; *High on Inj.* 801.

See also *High on Ext. Rem. Secs.* 32, 42, 43.

Appellants bound to obey the injunction whether rightfully or wrongfully issued. *High Ext. Rem., Sec.* 852, *1st Ed. Ib. Secs.* 847–9, 32, &c.

*Geo. Sibly* and *Clark & Williams* for appellee.

To count the votes as returned was the plain duty of the canvassing board. It was a plain *ministerial* duty to perform, merely to count the votes as returned and certify to the County court, which, alone, possessed *exclusive* jurisdiction to hear and determine all questions of fraud, illegality or irregularity. The canvassers had no authority to throw out or refuse to count anything, and mandamus was the proper remedy. *Patton v. Coates*, 41 *Ark.*, —; 26 *Ark.*, 100. The injunction was no defense, as the court had no jurisdiction to award the injunction, and it was void. *High on Inj. Sec.* 1250, 1257; *McCrary on Elections, Sec.* 220, 318, 340; 15 *Kans.* 500; 5 *Oregon*, 427.

The County Court has *exclusive* jurisdiction. *Const. Art.* 7, *Sec.* 28, and the County Court must devise the machinery to carry it into effect. The removal of a County seat is clearly a local concern of the county. Under the present Constitution giving County Courts *exclusive* jurisdiction, the County Court must *first* act before equity can interfere for

fraud. The remedy was clearly by contest in the County Court. 17 *Ohio* 271.

Cite further 16 *Wall*, 203; *McCrary on Elections, Sec.* 81–2–4, 145, 166.

SMITH, J. Pursuant to an order of the County Court, an election was held in Prairie County on the 15th of February 1883, to determine whether the county seat should be removed from Des Arc to Hazen. Returns were made to the Circuit Clerk, who is ex officio clerk of the County Court, and he called in two justices of the peace to assist him in canvassing the vote. Before the canvassers had performed their duties, a bill in equity was filed by the citizens of Des Arc and a temporary injunction was granted by the County Judge, restraining them from opening and counting the poll-books of the townships of Carlisle, Tyler and Belcher, and from counting more than 180 of the 265 votes that were cast in Hazen township.

It was alleged that the returns from the three townships first above named were transmitted to the clerk through persons who were not election officers; but there was no suggestion that the returns had been tampered with. It was also alleged that 85 illegal and fraudulent votes had been polled in Hazen. Pending this injunction suit, a petition was filed by certain citizens and tax-payers of the county, for a writ of mandamus to compel the clerk and his associates to proceed with the count of the votes of all the townships as returned to them, and to certify the result to the County Court to the end that it might be determined whether the proposition for removal had been carried or rejected. The clerk and justices responded that they had been enjoined, and set up the above mentioned frauds and irregularities. Before the cause came on for hearing, the Chancellor had dissolved the injuction against canvassing the

5——43

returns from Carlisle, Tyler and Belcher, retaining the bill, however, to inquire into the 85 alleged fraudulent votes in Hazen. So a peremptory mandamus was awarded against the clerk and justices to proceed with their duties under the law, as to the three townships whose returns had been irregularly transmitted to the clerk, but the writ was denied as to the returns from Hazen. From this judgment both the relators and the defendants have appealed.

1. MANDA-
MUS :
W h e n
proper rem-
edy. .

Mandamus is an appropriate remedy where a public officer is called to perform a plain and specific public duty, positively required by law, calling for the use of no discretion, nor the exercise of official judgment. *State ex rel. Ins. Co. v. Moore*; 42 *Ohio St.*; *Howard v. McDiarmid*, 26 *Ark.*, 100; *McCrary on Elections, Sec.* 331.

2. CAN-
VASSING
BOARDS:
Their duties

Now the duties of canvassing boards are purely ministerial. They are not invested with judicial functions and they have no discretionary power to go behind the returns for any purpose. *McCrary on Elections, Secs.* 81 *to* 85 *and cases cited. Coates v. Patton,* 41 *Ark.,* 111.

3. MAN-
N E R    O F
COND U C T-
ING ELEC-
TIONS :
Statute di-
rectory.

It is true, Sec. 4 of the Act of March 2, 1875, for the locating and changing of county seats directs that the poll-books be conveyed to the clerk by one of the election officers to be designated by the judges of election. And there is a similar provision in the general election laws (Sec. 42 of Act of January 23, 1875). But statutes concerning the manner of conducting elections are directory, unless a non-compliance is expressly declared to be fatal to the validity of the election or will change or render doubtful the result. *McCrary on . Elections Sec.* 200.

4. Election
of County
Seat:
Jurisdiction
of chancery:
Of County
Court:
Appeal.

Upon the cross-appeal of the relators: Chancery has ordinarily no jurisdiction of the merits of a contested election. *McCrary on Elections, Secs.* 220, 318, 340 ; *Dickey v. Rudd,* 78 *Ill.* 261 ; *Peek v. Weddell,* 17 *Ohio St.,* 271 ; *Sanders v. Metcalf,* 1 *Tenn. Ch'y* 419.

Willeford et al v. State Ex. Rel., &c.

Our constitution provides, however, that "no county seat shall be established or changed without the consent of a majority of the qualified voters of the county." Art XIII, Sec. 3. And the legislature has provided no mode for contesting a county seat election. Under such circumstances and to protect the rights of the majority intended to be secured to them by the fundamental law, it was held in, *Boren v. Smith,* 47 *Ill.,* 482 ; *and People v. Wurt* 48 *Id.,* 263, that a court of equity must take jurisdiction of a bill impeaching the election for illegality in holding it, or unfairness in the conduct of it. But the Reports will be searched in vain for a precedent where the court has interfered, collaterally and before the result has been declared, to restrain the officers of election from counting illegal votes.

By Section 28 of Art. VII, Constitution of 1874, exclusive original jurisdiction is vested in the County Court in all matters pertaining to the local concerns of the county. And the removal of a county seat is a matter of local concern. *Blackburn ex parte,* 5 *Ark.,* 21 ; *Russell v. Jacoway* 33 *Id·,* 191. We do not forget that in *Maxey v. Mack,* 30 *Ark.,* 472, this court decided that the Board of Supervisors had no implied power to enquire into the regularity and fairness of such an election. But that election took place when the constitution of 1868 was in force. And under it, the jurisdiction, powers and even existence of the courts inferior to the Circuit Courts, depended upon the legislative will.

And the Act of May 23, 1874, providing the mode of changing the county seat of Clayton County, had purposely passed over the Board of Supervisors and had directed the returns to be made to the supervisors of the election for a constitutional convention.

The County Court has the authority then to determine in the first instance where the county scat is, and whether the conditions have arisen upon which a removal is required.

This may incidentally involve the question, whether the vote has been fairly taken and the necessity, if fraud has supervened, to purge the polls. A revision of its action may then be had upon the appeal of any person aggrieved, to the Circuit Court. *Constitution of* 1874, *Art. VII, Sec.* 33; *Act of Feb'y* 20, 1883, *Sec.* 1; *Varner v. Simmons,* 33 *Ark.,* 212.

5. Injunctions without jurisdiction void    It follows that the Prairie Circuit Court had no power to restrain by injunction a board of canvassers from canvassing the returns of the election; that the temporary injunction, having been awarded in a matter where the court could not under any circumstances, hear, determine and decree in reference to such matter, was void and could not legally operate on any one, nor could anybody be punished for disobeying it; and the response to the petition for mandamus disclosed no sufficient reason why the writ should not go.

The judgment below, in so far as it awards the peremptory writ to the canvassers to count the vote from Carlisle, Tyler and Belcher is affirmed, but in so far as it refused to compel them to count all the votes that were returned to them as cast at Hazen, it is reversed. And the cause is remanded with directions to issue the writ.