PITCOCK v. STATE.

Opinion delivered July 12, 1909.

1. CONTEMPT—EVASION OF SERVICE OF WRIT.—Where a party to a suit in equity, after receiving actual notice of the issuance of a writ of injunction therein, evaded the service of the writ and violated the injunction, he will be held to have been in contempt of court if the court possessed jurisdiction of the cause. (Page 533.)

2. SAME—DISOBEDIENCE OF WRIT ERRONEOUSLY ISSUED.—If a court had jurisdiction of the parties and subject-matter of the cause of action in which an injunction was issued, the fact that the injunction was erroneously and improvidently issued does not excuse disobedience upon the part of those who were bound by its terms. (Page 533.)

3. JUDGMENTS—NECESSITY OF JURISDICTION.—Where the pleadings in a case show on their face that the court is wholly without jurisdiction of

the subject-matter set forth therein, any preliminary order made or final judgment rendered is void. (Page 533.)

4. STATE—WHEN SUIT HELD TO BE AGAINST.—A suit the purpose of which is to restrain an attempted breach by the Penitentiary Board of a contract alleged to have been entered into by such board on behalf of the State whereby convict labor should be furnished to the plaintiff is in effect a suit against the State, and cannot be maintained. (Page 534.)

5. SAME—SUIT AGAINST OFFICERS.—Where the pleadings show that a suit is in effect against the State, though nominally against certain State officers, the trial court had no jurisdiction, and a temporary restraining order issued by it will be quashed on certiorari. (Page 538.)

Certiorari to Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Hal L. Norwood,* Attorney General, and *James H. Harrod,* for petitioner.

1. Where an injunction is issued without authority of law, that is, in a matter over which the court had no jurisdiction, no one can be punished for disobeying it. 43 Ark. 63. Under the laws of this State no court has jurisdiction to grant a temporary injunction unless (1) it is specially authorized by statute; or (2) it affirmatively appears from the complaint that the plaintiff is entitled to the relief demanded, and that the acts sought to be restrained would, if committed, cause great or irreparable injury. Kirby's Dig., § 3965. Before a temporary restraining order can be granted to prevent the violation of a contract, the contract must be free from doubt. High on Inj., § 695. The complaint on its face shows that it is a suit against the State, and is ruled by 123 U. S. 443. It does not show that plaintiff would suffer great or irreparable injury. High on Inj., § 35.

2. If the injunction was legally issued, petitioner could not be held to have violated it. Unless notice has been given of intention to apply for an injunction, it, when issued, must be indorsed on the summons and served by the sheriff. Kirby's Dig., § § 3982, 3983. Mere verbal notice is not sufficient. The law provides that notices must be in writing, and how served. Kirby's Dig., § § 6267-8. However, petitioner's testimony is *undisputed* that he had given the order to bring the prisoners in *before* counsel spoke to him over the telephone.

*Murphy, Coleman & Lewis,* for respondent.

If the complaint in the case of *Arkansas Brick & Manufacturing Company* v. *Pitcock* was such that the court had the power to hear and determine the allegations therein, it had jurisdiction to issue the injunction. This court has expressly held that the lower court had jurisdiction in such cases. 70 Ark. 588. See also 1 Black on Judgments, § 215; 34 Ark. 110.

When the court upon a hearing of the complaint and in the exercise of its discretion decides that a temporary restraining order should go, it is the duty of the party against whom the injunction was issued to obey it. He has his remedy, if it is improvidently issued, to apply to the court itself to dissolve it or modify its terms, and he cannot on his own motion disobey the injunction and then purge himself of contempt by claiming that the court had no jurisdiction to issue the order. High on Inj., § 847; Bailey on Jurisdiction, § 3041, p. 336; 78 Ark. 266; 9 N. Y. 263; 232 Ill. 402; 114 N. W. 628; Bailey on Jur., § § 2, 3, 4; 10 Am. & Eng. Enc. of L. 1105; 25 Mo. App. 639; 144 Fed. 284; 143 Fed. 375; 62 Fed. 826.

2. If a party is informed of the application for an injunction, it is not necessary that he have notice that the injunction has actually issued. Kirby's Dig., § 3984; High on Injunctions, § § 852, 853; 144 Fed. 1011; *Id.* 279.

McCULLOCH, C. J. Certiorari to the chancery court of Pulaski County to review and quash the judgment of that court adjudging petitioner, J. A. Pitcock, to be guilty of contempt in disobeying an injunction.

On January 14, 1909, the Arkansas Brick & Manufacturing Company, a corporation, instituted suit in the Pulaski Chancery Court against appellant J. A. Pitcock, superintendent of the Arkansas State Penitentiary, and Geo. W. Donaghey, Governor of the State, O. C. Ludwig, Secretary of State, Hal L. Norwood, Attorney General, Jno. R. Jobe, Auditor of State, and Guy B. Tucker, State Commissioner of Mines and Agriculture, composing the Board of Commissioners of the Arkansas State Penitentiary, to restrain them from violating an alleged contract which had been entered into between them and the plaintiff for furnishing to the latter of the labor of State convicts. It is alleged in the complaint that on February 3, 1899, a written con-

tract was duly entered into between the Arkansas Chair Factory, a corporation, and the superintendent and financial agent of the State Penitentiary, with the approval of said Board of Commissioners, whereby the convicts of the State were hired to said corporation at price of fifty cents per day for each man worked, for a period commencing on that day and ending January 1, 1909; that, according to the terms of said contract, it was agreed that forty able-bodied convicts were hired for the first year, and as many thereafter as needed, not exceeding two hundred; that the board should furnish all necessary buildings to be used under the contract (except certain ones specified), and also clothe and feed the convicts; that prior to July 31, 1899, said Arkansas Chair Factory, with the consent of said board, assigned said contract to plaintiff; that on the last-named date said contract was by mutual consent of the parties amended so as to permit the working of convicts by plaintiff outside of the walls of the Penitentiary in manufacturing, agriculture, railway building and other pursuits, and that said board should furnish to plaintiff three hundred able-bodied men on demand of the plaintiff after January 1, 1900, and that plaintiff should work not less than one hundred men at all times; that plaintiff complied with its part of the contract, and at great expense prepared to work said convicts; that the Board of Commissioners complied with said contract except that after January 1, 1901, they failed to furnish the number of convicts required by the contract, and only furnished a far less number; that since the first day of January, 1900, and up to the time of the commencement of this suit, the plaintiff has continuously demanded from said board the amount of convict labor called for by said contract, but that the board and superintendent at various times and under various pretexts failed to furnish the amount of labor so demanded, but that in each instance, when the requisite number were not furnished on demand, said Board of Commissioners represented to the plaintiff that it would subsequently make good the deficit thus caused by furnishing to said plaintiff such an amount of convict labor as to make it receive eventually the aggregate number of convicts called for by said contract, and that "in each instance the said superintendent and board expressly promised to make good said deficit and adopted resolutions to this effect, which were spread

at length upon the minutes of said board, and the plaintiff could not other than rely upon said representations and promises, and for this reason it accepted the same;" that, "in reliance upon said representations and promises of the board and believing that the State would carry out its contract with it in all respects, it was induced to make the large expenditures hereinbefore stated, which were absolutely necessary in order to prepare the proper facilities for making it profitable to the plaintiff to use the amount of labor due it under said contract, and which it fully expected would eventually be furnished to it;" that the said members of the Board of Commissioners, pretending to act as the Board of Penitentiary Commissioners, had on the 14th day of January, 1909, made and were about to enforce a resolution in substance declaring said contract to be at an end and directing the superintendent of the Penitentiary to withdraw all convicts from the premises and works of the plaintiff and place them on the State farm or within the walls of the Penitentiary.

It is further alleged in the complaint "that the Board had no authority in law to make said pretended order, and that the same is null and void; that the said board had no authority to take the said convicts from the plaintiff until the balance of the convict labor due to the plaintiff, as aforesaid, has been furnished to the plaintiff in full; that the said resolution was passed, not because of any default on the part of the plaintiff in carrying out the terms of said contract, and not because the board does not acknowledge the violation of said contract on its part as herein alleged, but solely on the ground that the board pretends to possess the arbitrary power of withholding said labor from the plaintiff on the theory that the State is not amenable to any legal proceeding against it, and that the members of the board can shield themselves by this protection in favor of the State."

The prayer of the complaint is as follows: "Premises considered, the plaintiff prays that a temporary restraining order be made, restraining the defendants, and each of them, from taking any action looking to the withdrawal of the convicts now in its possession, and particularly from taking from plaintiff's brick works any of the men now engaged in labor therein, and requiring said Board of Penitentiary Commissioners, and the super-

intendent of said Penitentiary, to carry out the terms of the agreement hereinbefore set forth—that is, to require said board and superintendent of the Penitentiary to furnish the plaintiff a sufficient number of able-bodied convicts to repay it for the labor of the convicts so withheld, withdrawn and taken from it by the Board of Commissioners as set forth herein. Plaintiff prays that upon the final hearing a decree be entered as above prayed, and that the said order of the board directing the superintendent to take away from the plaintiff the convicts now held by it, and refusing to carry out the terms of the agreements before stated, be declared null and void."

It will be seen from the foregoing statement of facts that the contract, dated February 3, 1899, as amended on July 31, 1899, is the same contract which was the subject of litigation in the case of *McConnell* v. *Ark. Brick & Mfg. Co.,* 70 Ark. 568, and it is so pleaded in this action, it being alleged that the contract had, by the Pulaski Chancery Court, and by the Supreme Court on appeal, been adjudged to be valid and enforceable.

Upon the filing of said complaint, the same was presented to the chancellor at chambers, and he at once granted a temporary injunction in accordance with the prayer of the complaint, restraining said members of the Board of Commissioners and the superintendent of the Penitentiary from withdrawing said convicts. The injunction was duly issued by the clerk after execution of the bond by plaintiff in accordance with the statute and the order of the chancellor, and immediately served on all the members of the board; but the sheriff was unable to serve same upon appellant Pitcock until Monday morning, January 18, 1909. He was, however, duly notified of the issuance of the injunction by the sheriff, and by one of the attorneys for the plaintiff in a conversation over the telephone, immediately after the issuance of the injunction, and before he removed the convicts.

Immediately after the adoption of the resolution by the Board of Penitentiary Commissioners, and regardless of the notice to him of the issuance of the injunction, Pitcock set about complying with the resolution, and within the succeeding three days withdrew all convicts from the plaintiff's works and premises, and returned same to State convict farm and to the walls of the Penitentiary.

Upon the affidavit filed by the plaintiff setting forth the issuance and violation of said injunction, Pitcock was cited by the chancellor to appear and show cause why he should not be punished for contempt, and upon a hearing he was adjudged by the chancery court to be in contempt on account of having violated said injunction, and a fine of $500 was imposed upon him. The record has been brought here by writ of certiorari to review the action of the chancery court in adjudging Pitcock to be in contempt and imposing the fine upon him.

It is earnestly insisted on behalf of appellant that the evidence introduced at the hearing does not sustain the finding of the chancellor that appellant was informed of the issuance of the writ of injunction prior to the service on him on January 18, 1909, or that he had violated the injunction after being notified thereof. We are convinced, however, from a careful consideration of the testimony adduced at the hearing, that Pitcock, after receiving actual notice of the issuance of the injunction, evaded the service of the writ by the sheriff, and intentionally violated its terms by withdrawing the convicts from the premises and works of said plaintiff, pursuant to the resolution adopted by the Board of Penitentiary Commissioners. Actual notice of the issuance of the injunction, without formal service of the writ upon him, was sufficient to put him in contempt of the court by violating the terms of the writ, if the court possessed jurisdiction of the cause. Kirby's Dig. § 3984; 1 Joyce on Injunctions §§ 247-249, 251; High on Injunctions §§ 352, 353. We therefore treat as settled the fact that appellant Pitcock intentionally violated the injunction; and the only remaining question is whether or not the court had jurisdiction, for it is well settled that errors of the court in issuing an injunction cannot be taken advantage of by one who has violated the injunction.

If the court had the jurisdiction of the parties and subject-matter of the cause of action in which the injunction was issued, the fact that it was erroneously and improvidently issued does not excuse disobedience on the part of those who are bound by its terms. *Meeks* v. *State*, 80 Ark. 579.

In considering this question, the distinction must not be overlooked between the violation of a preliminary injunction

preserving the *status quo of* the subject-matter of the litigation
during the pendency thereof, and the final decrees of courts
requiring the parties to do or not to do the things enjoined upon
them by such decrees.  In the latter cases, if the decree was
rendered without jurisdiction, it can be disobeyed with impunity,
for no one owes obedience to a void decree, as it is without
any force whatever.  "A void judgment is, in legal effect, no
judgment.  By it no rights are divested.  From it no rights
can be obtained.  Being worthless in itself, all proceedings
founded upon it are equally worthless.  It neither binds nor
bars any one.  All acts performed under it and all acts flowing
out of it are void.  The parties attempting to enforce it may
be responsible as trespassers."  *Rankin* v. *Schofield,* 81 Ark.
463.  On the other hand, a court possesses the power of hearing
and determining the question of its jurisdiction, and may, while
so doing, require the parties to preserve the status of the sub-
ject-matter. *United States* v. *Arredondo,* 6 Pet. 709; *United States*
v. *Shipp,* 203 U. S. 563.  However, when the pleadings show on
their face that the court is wholly without jurisdiction of the
subject-matter set forth therein, any preliminary order made or
final judgment rendered is void.  *Williford* v. *State,* 43 Ark. 62.

It becomes necessary, therefore, to inquire as to the alleged
cause of action set forth in the complaint—whether any cause
of action is set forth at all, and, if so, whether or not it falls
within the jurisdiction of the chancery court.

The complaint alleges in substance that the State of Arkan-
sas, acting through its authorized officers and agents, entered
into a written contract with the plaintiff's assignor for the
hire of convicts, that the said contract was subsequently assigned
to plaintiff and amended in writing, and also was subsequently
amended by a verbal promise and undertaking of the Board of
Penitentiary Commissioners, which was duly entered in writing
on the minutes of the board, to the effect that the deficit in the
number of convicts called for in the contract to be furnished to
the plaintiff should be made good, so that the plaintiff should
receive the aggregate amount of convict labor specified in the
contract.  In other words, the complaint sets forth an alleged
contract entered into with the Penitentiary Board, evidenced
partly by the original and amended writings, and partly by the

minutes of the board, to furnish the aggregate amount of convict labor provided for in the written contract. These allegations can only be construed to mean that the board agreed to continue to furnish convict labor to plaintiff until the aggregate amount specified in the contract should be supplied. The only difference between this case and that of *McConnell* v. *Ark. Brick & Mfg. Co., supra,* is that the latter was a suit to prevent an attempted rescission and breach of the written contract of February 3, 1899, as amended in writing on July 31, 1899, while the present suit is one to restrain an attempted breach of said amended contract as further amended subsequently by the alleged additional agreement of the Penitentiary Board, entered on the minutes thereof, to make good the deficit in the aggregate amount of convict labor agreed to be furnished. The contract and each of the alleged amendments thereto were based on the same character of consideration, viz: the mutual undertakings of the contracting parties. The present suit, as was the McConnell case, is plainly one to restrain an attempted breach by the Penitentiary Board of a contract alleged to have been entered into by that board for the State of Arkansas whereby convict labor should be furnished to the plaintiff; the question at issue in each of the cases being whether or not the contract was a valid and subsisting one, and whether such suit was one against the State.

The first and only question necessary for us to determine in this case is whether or not this is a suit against the State; for, if it is, then the chancery court was wholly without jurisdiction to proceed, and all orders and judgments attempted to be rendered therein were void. *In the matter of Ayres,* 123 U. S. 443. A sovereign State cannot be sued except by its own consent; and such consent is expressly withheld by the Constitution of this State. Art. 5, § 19.

The question whether a suit is one against a State is not necessarily determined by reference to the parties to the record. If the State is the real party in interest, though only its officers and agents are parties, then it is in effect a suit against the State, and falls within the rule of prohibition. *Poindexter* v. *Greenhow,* 114 U. S. 270; *Hagood* v. *Southern,* 117 U. S. 52; *In the matter of Ayres,* 123 U. S. 443; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Fitts* v. *McGehee,* 172 U. S. 516; *Farmers*

*National Bank of Hudson* v. *Jones,.* 105 Fed. 459; *Louisiana* v. *Jumel,* 107 U. S. 711.

In *Fitts* v. *McGhee, supra,* Mr. Justice Harlan, speaking for the court, said: "As a State can act only by its officers, an order restraining those officers from taking any steps, by means of judicial proceedings, in execution of the statute of February 9, 1895, is one which restrains the State itself, and the suit is consequently as much against the State as if the State were named as a party defendant on the record. If the individual defendants held possession of, or were about to take possession of, or to commit any trespass upon, any property belonging to or under the control of the plaintiffs, in violation of the latter's constitutional rights, they could not resist the judicial determination, in a suit against them, of the question of the right to such a possession by simply asserting that they held or were entiled to hold the property in their capacity as officers of the State."

In *Farmers Nat. Bank* v. *Jones, supra,* Judge Caldwell said: "As a State can perform its functions through officers and agents only, it was soon perceived that, if these officers and agents of the State were liable to be sued and coerced to comply with the judgments and decrees of a Federal court, the whole scope and purpose of the amendment would be nullified. * * * It is now settled that the jurisdiction in such cases is dependent upon the real, and not the nominal, parties to the suit, and it is now clear, both upon principle and authority, that a suit against the officers of a State to compel them to do acts which would impose a contractual pecuniary liability upon the State, or to issue any evidence of debt, in the name of the State, which would have that result, is in fact and legal effect a suit against the State, though the State itself is not named a party on the record."

In the Ayres case, *supra,* Mr. Justice Matthews, speaking for the Supreme Court of the United States, said: "A bill, the object of which is, by injunction, indirectly to compel the specific performance of the contract by forbidding all these acts and doings which constitute breaches of the contract, must also, necessarily, be a suit against the State. In such a case, though the State be not nominally a party on the record, if the defendants are its officers and agents, through whom alone it can act in doing and refusing to do the things which constitute a breach of

its contract, the suit is still, in substance, though not in form, a suit against the State."

And again, in the same case, it is said: "Where the contract is between the individual and the State, no action will lie against the State, and any action founded upon it against defendants who are officers of the State, the object of which is to enforce its specific performance by compelling those things to be done by the defendant which, when done, would constitute a performance by the State, or to forbid the doing of those things which, if done, would be merely breaches of the contract by the State, is in substance a suit against the State itself, and equally within the prohibition of the Constitution."

In actions against officers of the United States, the same principle has been announced. *Belknap* v. *Schild,* 161 U. S. 10; *Minnesota* v. *Hitchcock,* 185 U. S. 373; *International Postal Supply Co.* v. *Bruce,* 194 U. S. 601; *Naganab* v. *Hitchcock,* 202 U. S. 473.

In *Belknap* v. *Schild, supra,* which was a suit filed against Belknap, a commodore in the United State Navy and commandant of the United States Navy Yard at Mare Island, California, to restrain him from using caisson gates which, it is charged, were an infringement of letters patent granted by the United States to the plaintiff, the court held that it was a suit against the United States, and could not be maintained. In discussing the question, the court said: "No injunction can be issued against the officers of a State to restrain or control the use of property already in the possesion of the State, or money in its treasury when the suit is commenced; or to compel the State to perform its obligations; or where the State has otherwise such an interest in the object of the suit as to be a necessary party."

The doctrine of these cases is reaffirmed by the Supreme Court of the United States in the recent case of *Murray* v. *Wilson Distilling Co.,* 213 U. S. 151.

The only distinction found in these cases is that where the suit is against an officer to prevent him from doing an unlawful act to the injury of the complaining party, such as the taking or trespass upon the property belonging to the latter, the former cannot shield himself behind the fact that he is an officer of the State; and also where the officer refuses to perform

a purely ministerial act, the doing of which is imposed upon him by statute. In either of such cases a suit against such an officer is not a suit against the State.

In determining whether a suit is against the State, it is unimportant whether the contract sought to be enforced, or the breach of which is sought to be enjoined, is or is not a valid one. The fact that it is a valid contract does not justify the suit against the State, and that question has no place in an inquiry as to whether or not a suit is against the State. "An injunction restraining the breach of a contract is a negative specific enforcement of the contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and rules; and it may be stated as a general proposition that wherever the contract is one of the class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit." 4 Pomeroy, Eq. Jur. § 1341; *McDaniel* v. *Orner, ante* p. 171.

This court in the McConnell case, *supra,* held that that was not a suit against the State because the Penitentiary Board had executed a valid and then subsisting contract with the plaintiff, but was attempting without legal authority to break it by a refusal to perform it. That distinction is untenable. The Penitentiary Board is created by statute as the agent of the State to manage and provide for working the convicts of the State. That board has the power to make contracts for the State, and it is the sole agent of the State in the performance of such contracts. The board does not perform merely ministerial acts; what it does involves judgment and discretion, and all that it does for the State. The State can, under the present statute, make and perform contracts with reference to the management of convicts only through the agency of this board. Therefore, an injunction against the board restraining it from violating a contract necessarily results in requiring the board, and through it the State, to specifically perform its contract.

The alleged contract was one merely to furnish the labor of convicts. The board, acting for the State, retained custody and control of the convicts, and were to permit them to labor

for the plaintiff for a stipulated price. A withdrawal of the convicts from the premises of the plaintiff was not a taking or trespass upon the latter's property. It was only a refusal to perform the alleged contract which plaintiff seeks to restrain.

It is with great reluctance that we have concluded to review the McConnell case and overrule the doctrine therein announced, but a majority of the judges are of the opinion that the decision was wrong, and contrary to the great weight of authority. The overruling of a decision has the unfortunate tendency of rendering the laws of the State less certain. Decisions which become rules of property should never be overruled, whether they are right or wrong. But where, as in this instance, no rule of property is disturbed, and the dignity and sovereignty of the State is involved, we conceive it to be our duty to correct the mistake of the court as speedily as possible by overruling a former decision which we have become thoroughly satisfied is erroneous and contrary to the recognized rules established by the other courts of the country. No one can have a vested right to sue the State. The State can either extend or withhold the right. All who contract with the State must do so with full knowledge that they must rely solely upon the legislative branch for performance of the contract and for satisfaction of the State's just obligations. Even the privilege of suing the State, when once extended, does not afford the basis of a vested right to sue or to prosecute to termination a suit once commenced; and such privilege may be withdrawn without disturbing any vested right, even after suit has been commenced. *Beers* v. *State,* 20 Howard, 572.

The plaintiff cannot complain because the court overrules its former decision, even though that decision permitted the plaintiff to maintain its suit similar to the one now before us.

The judgment of the chancery court, adjudging the petitioner to be in contempt of that court, is therefore quashed, and said proceedings against the petitioner are dismissed.

HART, J., (concurring.) A majority of the judges think that the allegations of the complaint which was the basis of the injunction, for a disobedience of which Pitcock was fined, bring this case squarely within the principles of *McConnell* v. *Arkansas Brick & Manufacturing Company,* 70 Ark. 568; and that the

decision here, if that case is to stand, must be an affirmance. I do not think so. In the McConnell case there was a valid contract, made pursuant to our statutes regulating the hiring out of convicts, between the Board of Penitentiary Commissioners, as the agents and representatives of the State, and the Arkansas Brick and Manufacturing Company. The effect of the holding in the McConnell case was that the board could not abrogate that contract, such power being vested alone in the Legislature, and they were enjoined from so doing. The instant case to my mind is plainly distinguishable. The contract shows by its terms that it has expired. The allegations of the complaint amount to no more than an attempt by judicial construction to extend the terms of the contract exhibited with it. In short, the thing, asked to be done and performed by the Penitentiary Board are the very things which, when done and performed, would constitute a performance of the contract as its terms are construed by the successors to the Arkansas Brick & Manufacturing Company. In other words, the case resolves itself into a suit for a specific performance against the State. My attention has been called to no case, and I have been unable to find any, which gives the courts jurisdiction to entertain such a suit. Such a view is contrary to the principles of State sovereignty upon which our government is founded, and which must endure as long as the State itself. Because the expression of a majority of the judges as above indicated as to the effect of the McConnell case is in my judgment an unwarranted extension of the principles at issue in that case, and because I believe the McConnell case to be wrong in principle, I have voted to overrule it.

WOOD, J., (concurring.)   I concur in the judgment, but dissent from the opinion. Why should the "McConnell case" be overruled? The doctrine of that case is sound "to the core." That case is not only unlike this, but it is not even of kin. In that case the contract was in existence, having yet seven years to run. In the present case the contract had expired. The allegations of the complaint do not disclose any new contract, but only set up the old, and certain promises by the board to carry out its provisions which were never fulfilled. And now, after the contract has expired, this effort is made to have the time for its performance extended by judicial construction, and to have

the various promises that were made to fulfill the old contract carried out. The allegations do not show any contractual relations between the State and the Brick Company.

In my opinion, time was of the essence of the old contract, and any promises made on the part of the board to comply with its provisions which remained unfulfilled when that contract expired died with it, and the officers in withdrawing the convicts after the contract had expired were but discharging their duty according to law, and, of course, were representing the State. The chancery court, therefore, so far as the enforcement of the provisions of that contract is concerned, is wholly without jurisdiction to "hear, determine and decree in reference to such matter, and any decree it might make would be void, and could not legally operate on any one, nor could anybody be punished for disobeying it." The court was without jurisdiction of the State, a necessary party. One of the essentials of jurisdiction is that the court have before it the proper parties. *Williford* v. *State,* 43 Ark. 62. See also *Rankin* v. *Schofield,* 81 Ark. 463. Therefore I have concurred in the judgment because the allegations of the complaint do not state a cause of action to give the chancery court jurisdiction. But, on the contrary, the complaint, on its face, shows that the court had no jurisdiction of the State, the real party in interest.

But, if it be true that the present case cannot be distinguished from the McConnell case, then the decree of the chancellor was clearly right and should be affirmed. As the only living member of this court who concurred fully in the views so well expressed in the McConnell case, I challenge the statement of the opinion in the present case that the decision in the McConnell case is erroneous and contrary to the recognized rules established by the other courts of the country.

Let us see. In the McConnell case the Board of Penitentiary Commissioners, under a statute expressly authorizing it (secs. 3855-6 of Kirby's Digest), on July 31, 1899, entered into a contract with the Brick Company whereby the board was to furnish the company after January 1, 1900, and until January 1, 1909, 300 able-bodied convicts. The parties had entered upon the performance of the contract. The Brick Company, as alleged in its complaint and as confessed by the demurrer, "had expended

for buildings, machinery, etc., for the purpose of equipping said plants so that it might comply with the terms of its contract, about $300,000." The board had furnished the convicts.

On the 13th day of August, 1901, after the contract had been in force about 20 months, the State officers, constituting the Board of Penitentiary Commissioners, passed a resolution annulling and setting aside the contract and ordering the superintendent of the Penitentiary "to withdraw from said Brick Company all convicts in their employ, and turn them back into the walls of the Penitentiary, subject to the further orders of the board." It was confessed by the demurrer that the Brick Company had fully carried out the contract on its part. The statute under which the board was authorized to make the contract did not give it power to rescind it, and there was no other statute giving it such power. So the action of the board in setting aside the contract and its order directing the superintendent "to withdraw all convicts in the employ of the Brick Company was purely arbitrary.

The Brick Company brought suit against the members of the board, and against the superintendent and the financial agent of the Penitentiary, to have the resolution attempting to set aside the contract declared null and void, and to restrain them from taking any action to prevent the due performance of the contract under the void order, and *"particularly from taking from the Arkansas Brick & Manufacturing Company any of the men then engaged in labor therein,* and to require the superintendent, McConnell, to proceed with the execution of the contracts and the furnishing of the labor as therein agreed upon."

The appellants (defendants in that case) contended that, in passing the resolution setting aside the contract and making the order directing the superintendent to withdraw the convicts, the board was acting for and representing the State, and that the State was therefore a necessary party. In response to that contention we said: "The power and authority to make a contract is one thing, but the power to abrogate it is quite another thing, and the latter power is, in this government, possessed by neither the State nor any of her citizens. The State can only speak through the legislative department, which is the mouthpiece of the sovereign; and the Legislature can lawfully pass no law

impairing the obligation of contracts. It is and has been the law from time immemorial that a public agent acting without the scope of his authority without authority of law can not shield himself behind the sovereign, the State, but where injury is thereby done to private citizens, the officer or agent is a trespasser and personally liable in damages."

We further said, quoting from the Supreme Court of the United States: "Such a defendant, sued as a wrongdoer, who seeks to substitute the State in his place, or to justify by authority of the State, or to defend on the ground that the State has adopted his act and exonerated him, can not rest on the bare assertion of his defense, but is bound to establish it; and, as the State is a political corporate body, which can act only through agents and command only by laws, in order to complete his defense, he must produce a valid law of the State which constitutes his commission as its agent and warrant for his act." *Poindexter* v. *Greenhow*, 114 U. S. 270.

The judges who rendered the decision in the McConnell case were of the opinion that the Board of Penitentiary Commissioners exceeded their powers in attempting to set aside the contract, and that their acts in so doing were wrongful, and such as to render them liable as individuals for any damages directly resulting to others from such acts. *Nicks* v. *Rector*, 4 Ark. 284; *Rice* v. *Harrell*, 24 Ark. 402; *O'Conner* v. *Auditor*, 27 Ark. 242; *Simpson* v. *Robinson*, 37 Ark. 142; *Parham* v. *McMurray*, 32 Ark. 269; *State* v. *Newton*, 33 Ark. 276; *DeYampert* v. *Johnson*, 54 Ark. 165; *Railway Co.* v. *Hackett*, 58 Ark. 381. See also *Hawkins* v. *United States*, 96 U. S. 692; *Whiteside* v. *United States*, 93 U. S. 257.

The Legislature itself could not rescind or set aside the contract and deprive the Brick Company of the benefit thereof unless that power was expressly reserved in the act conferring upon the board the authority to make the contract. *Woodruff* v. *Berry*, 40 Ark. 256; *Berry* v. *Mitchell*, 42 Ark. 244.

The board certainly had no authority except what the Legislature had given them. The Legislature had not even attempted to vest them with power to destroy or to impair the obligations of the contract which they were authorized to make. The Supreme Court of the United States has quite recently decided that: "The

attempt of a State officer to enforce an unconstitutional statute is a proceeding without authority of, and does not affect, the State in its sovereignty or governmental capacity, and is an illegal act, and the officer is stripped of his official character, and is subjected in his person to the consequences of his individual conduct." Ex parte *Young*, 209 U. S. 123.

In the McConnell case we were of the opinion that the facts brought the case strictly within the general doctrine announced by Chief Justice Marshall in *Osborn* v. *United States Bank*, 9 Wheat. 738, to the effect that a State officer will be restrained from executing an unconstitutional statute of the State when to execute it would violate rights and privileges of the complainant which had been guaranteed by the Constitution and would work irreparable damage and injury to him. In *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 9, complainants sought to restrain the defendants, officials of the State, from violating, under an unconstitutional act, the complainants' contract with the State, and thereby working irreparable damage to the property rights of the complainants. The court held that such a proceeding was not a suit against the State, and said that the general doctrine of the "great and leading case of *Osborn* v. *Bank of United States*," as above stated, "has never been departed from."

If officers acting under an unconstitutional statute can be restrained from committing acts of wrong and injury to the vested rights of a complainant under a contract with the State, for a much stronger reason will officers be restrained from invading and destroying the rights of another under a contract with the State where such officers are acting without any color of authority whatever. This they were doing in the McConnell case. The withdrawal of the convicts which the Brick Company had in its possession, and which the board were attempting to do under their void resolution and order, would have meant an irreparable loss to the Brick Company, as the facts show, of many thousands of dollars. The Brick Company had a property right in the labor of the convicts.

It would make this opinion too long to review all the cases in this country supporting the doctrine announced in the McConnell case. It had long been an established doctrine in this State before that case was decided. In *Crawford* v. *Carson*, 35 Ark.

565, 578, we said: "The prohibition against suing the State or any officer representing her, in chancery, must be confined to such suits as seek to charge the State with some liability or duty, or to hold her or her officers as trustees of effects in their hands. Such and such only was the object of the statute. *It would open the way to intolerable tyranny to exempt officers of the State from injunctions to restrain them from illegal though colorable acts of authority.*"

The suit in the McConnell case was not, as the court now holds, a suit against the State to enforce the specific performance of her contract. Not at all; but it was a suit against the officers to restrain them from illegal and unauthorized acts to the injury of the rights of the Brick Company under the contracts, acts which were not only wrongful, but without even any color of authority. "The injunction," says the court in the McConnell case, "is not against the State, but against the defendants to restrain them from going beyond their powers. No order of the court can be against the State, nor against the defendants to compel them to perform those duties as officers and agents of the State." Mr. Rose, in his Code of Federal Procedure, says: "The distinction running through all the cases is between preventive and affirmative relief; between those cases in which State action is sought to be restrained by proceedings against State officers and those in which some affirmative though legal and proper act of the State is sought to be compelled. The 11th Amendment does not shield State officers in the performance of unlawful acts, though prescribed by State law; but it protects the State against compulsion in the performance of its sovereign functions, against the enforcement of a liability *ex contractu* or *ex delicto,* against *direct proceedings for the recovery of property* held by the State through its officers." "The cases," says he, "in which by mandamus or other writ State officers have been compelled to perform certain acts at the suit of individuals injured are no exception to this rule, since the foundation of the relief is the wrong of the officers in disobeying or maladministering the State law, and not the wrong committed by the State." 1 Rose, Code Fed. Procedure, pp. 50, 51 and numerous cases cited.

This is precisely the distinction we made in the McConnell case, and the failure of my brother judges to observe it in the

present case has caused the court to fall into the error of over-ruling the McConnell case and the case of *Crawford* v. *Carson* on the same point, although the latter is not expressly mentioned.

The Chief Justice in his opinion says: "The board does not perform merely ministerial acts; what it does involves judgment and discretion, and all that it does is for the State." I can never subcribe to that doctrine. The board was not representing the State at all when they passed the resolution annulling the contract and ordering the convicts taken away from the Brick Company.

"No principle is more firmly established than that when an officer exceeds his authority his acts are individual acts only, and do not bind the State. The State is liable only to the extent of the power actually given its officers, and not to the extent of their apparent authority." *Woodward* v. *Campbell,* 39 Ark. 583; *Woodruff* v. *Berry,* 40 Ark. 256; *Pulaski County* v. *State,* 42 Ark. 118; *St. Louis Ref. & W. G. Co.* v. *Langley,* 66 Ark. 52; Mechem, Publ. Off. §§ 511, 663; Throop, Pub. Officers, §§ 21, 551, 576.

The board had the discretion to make or not to make the contract. They had discretion in fixing the terms of the contract. But, after these terms were defined and agreed upon between the board and the Brick Company and the contract was entered into, the board no longer had any discretion in the matter of furnishing the number of convicts called for by the contract. The duty of the board to furnish the number of convicts named in the contract, and of the superintendent, who was the subordinate of the board, was purely ministerial in character.

Suppose the Legislature had provided that when the board makes a contract to let convict labor they shall furnish the labor of not less than three hundred able-bodied convicts. Would any one contend that after the board had made a contract for the number of convicts as prescribed by the statute, the duty of the board to furnish the number of convicts named would be a matter of judgment and discretion? Well, the Legislature, instead of prescribing the number of convicts to be let by the contract, has left the matter of designating the number open to the discretion of the board. But, after the board has exercised that discretion and designated the number in the contract they make, then the Legislature did not leave it to their discretion and judgment to withhold all or any part of the number called for in the contract.

After the board had designated three hundred as the number to be let by contract, under the statute authorizing them to make the contract, the legal effect was precisely the same as if the Legislature itself had designated that as the number that the board should furnish. And the simple act of furnishing the number of convicts called for by the contract was a ministerial duty imposed by law. So the litigation in the McConnell case was "with the officers, not the State." *Rolston* v. *Missouri Fund Com'rs,* 129 U. S. 390, 411.

Chief Justice Chase in *Mississippi* v. *Johnson,* 4 Wall. (U. S.) 475, has given a definition of a ministerial duty that has never since been improved. He says: "A ministerial duty, the performance of which may, in proper cases, be required by judicial process, is one in regard to which nothing is left to discretion. It is a simple definite duty, arising under conditions admitted or proved to exist and imposed by law." Our own court, through Mr. Justice SMITH, defines a ministerial act as follows: "One which an officer or tribunal performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act done." Ex parte *Batesville & Brinkley R. Co.,* 39 Ark. 82; *Grider* v. *Tally,* 77 Ala. 422; See Throop, Pub. Officers, § 535, and cases cited in note.

Since the contract fixed the precise terms as to the number of convicts to be furnished, and this duty under the statute was purely ministerial, it follows that from any and every viewpoint the doctrine of the McConnell case is right, and should not have been overruled.

The doctrine conforms to that class of cases which hold that "where a suit is brought against defendants, who, claiming to act as officers of the State, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the State, such suit, whether brought to recover money or property in the hands of such defendants unlawfully taken by them in behalf of the State, or for compensation in damages, or in a proper case where the remedy at law is adequate, for an injunction to prevent such wrong and the injury, or for a mandamus in a like case to enforce upon the defendant the performance of a plain legal

duty purely ministerial, is not, within the meaning of the Eleventh Amendment, an action against the State." Mr. Justice Lamar in *Pennoyer* v. *McConnaughy,* 140 U. S. 1, and citing *Osborn* v. *Bank, supra; Davis* v. *Gray,* 16 Wall. 203; *Tomlinson* v. *Branch,* 15 Wall. 460; *Litchfield* v. *Webster County,* 101 U. S. 773; *Allen* v. *Baltimore & Ohio Ry. Co.,* 114 U. S. 311; *Board of Liquidation* v. *McComb,* 92 U. S. 531, and *Poindexter* v. *Greenhow,* 114 U. S. *supra,* from which we have quoted. Other more recent cases are *Scott* v. *Donald,* 165 U. S. 112; *Smyth* v. *Ames,* 169 U. S. 466; In re *Tyler,* 149 U. S. 164, 190; *Tindal* v. *Wesley,* 167 U. S. 204, 220; *Prout* v. *Starr,* 188 U. S. 537, and Ex parte *Young, supra.* The facts in the McConnell case do not fit the doctrine of In re *Ayres,* 123 U. S. and that line of cases, but they do fit the line of cases followed by us as above indicated.

I am unable to see how the "dignity and sovereignty of the State are involved" in a suit to restrain her officers from exceeding their powers, and arbitrarily setting aside a contract, and destroying valuable rights thereunder. Nor do I think that the dignity and sovereignty of the State are involved in a suit to compel an officer to perform merely ministerial duties under a contract made under the authority of the statute. Such is the McConnell case, as the judges who rendered the decision, viewed the facts and the law. The doctrine there announced erects the same high standard for honesty and good faith in the conduct of public officers as that required by the law of private individuals in their dealings with each other. If I am correct in my views, this doctrine should remain the law in Arkansas forever.

BATTLE, J., (dissenting.) The contract involved in this case is the same as that held to be valid in *McConnell* v. *Arkansas Brick & Manufacturing Company,* 70 Ark. 568. But this is denied by saying that the contract adjudged to be valid in the McConnell case has expired. I do not think so. The Board of Commissioners of Arkansas State Penitentiary failed often to comply with that contract by furnishing the Arkansas Brick & Manufacturing Company with the labor of convicts as it had agreed to do, and upon each of such failures and during the life of the contract promised to furnish the company with such labor until it had furnished all it had contracted to do, and adopted resolutions to that effect, and caused them to be spread at length

upon its minutes. These promises were based upon valuable considerations, and did not constitute new contracts but a continuation of the old by an extension of the time of its performance. The labor to be furnished under the promises was to be in performance of the original contract, which could not expire until it was performed in the manner promised. If I am correct in this conclusion, the board is enjoined and restrained by the decree in the McConnell case from in any manner cancelling or annulling the contract as thus extended and "from refusing and failing to execute and carry out" its terms. The board in this case is the same as in that, the membership being different.

I dissented in the McConnell case on the ground that that suit was in effect, a suit against the State, which could not be sued. But the court held differently, and its judgment in that case has passed beyond its control, and become final, and I think should be enforced in this case. The parties have rightly acted upon the faith of it, and should not suffer on account of confidence in the judgment of the court.