## M. G. WEIDNER *et al.* v. IRENE FRIEDMAN *et al.*

### (*Knoxville.*   September Term, 1912.)

1. **DISORDERLY HOUSES. Keeping one is a nuisance and misdemeanor; remedy by fine, imprisonment, and abatement in criminal court.**

 The keeping of a disorderly house is a nuisance, both at common law and under our statute. Such offense is a misdemeanor, and the ordinary remedy is in the criminal court, where fine and imprisonment may be most effectively imposed and inflicted, and judgment of abatement may be entered. (*Post, p.* 681.)

2. **INJUNCTION. Maximum punishment that may be imposed by chancery for contempt in violating its injunction.**

 The chancery court can, for contempt in violating its injunction, impose no greater punishment than a fine of fifty dollars and imprisonment for ten days. (*Post, p.* 683.)

3. **DISORDERLY HOUSES. Cannot be prevented by an injunction against a congeries of them, when blame is not apportionable.**

 The chancery court has only a limited jurisdiction to grant relief against the maintenance of a disorderly house, at the suit of a private person, and can do so only when he shows special and peculiar injury to himself, different in kind from that suffered by the general public; and hence it has no jurisdiction of bills by private property owners to prevent the operation of a congeries of disorderly houses in a "red light district," by an injunction against the several owners, proprietors, and inmates of such houses, where it is practically impossible to apportion the blame, or to ascertain from the evidence the jurisdictional facts as to how much each house is responsible for the special injury alleged. (*Post, pp.* 681-684.)

 Case cited and approved:   Weakley v. Page, 102 Tenn., 179.

Weidner v. Friedman.

4. **SAME. Renting, conducting, or being an inmate is a criminal offense; punishment; abatement.**

The renting of a house to be used for a disorderly house, or conducting a house as such, or being an inmate of such house,. constitutes a criminal offense, subject to heavy fines and imprisonment for any term less than twelve months; and the houses can be broken up. (*Post, p.* 684.)

5. **NUISANCES. Injunctive relief against, must be promptly applied for, or it will be refused.**

Injunctive relief against the maintenance of a nuisance must be promptly applied for, or it will be refused upon the ground of laches. (*Post, pp.* 684, 685.)

Cases cited and approved: Caldwell v. Knott, 10 Yerg., 210, 212; Madison v. Copper Co., 113 Tenn., 331, 351-355; Weller v. Smeaton, 1 Cox, 103; Reid v. Gifford, 6 John. Chy. (N. Y.), 19.

6. **DISORDERLY HOUSES. Will not be enjoined after their existence for more than twenty-five years.**

A bill to enjoin, as a nuisance, the maintenance of a congeries of disorderly houses in a "red light district," which have existed and have been in operation there for more than twenty-five years, will be dismissed for laches. (*Post, p.* 685.)

See citations under the preceding headnote.

7. **INJUNCTIONS. Punishment for contempt in violation of injunction, though the bill is finally dismissed.**

Although the chancery court is without jurisdiction to enjoin the maintenance of a congeries of disorderly houses, the dismissal of such bills in the supreme court will not affect the contempt proceedings, instituted in the chancery court, for violation of the injunction granted in advance of a hearing on the merits, but since the injunction order was such as would have been superseded, if timely application had been made therefor, the imprisonment will be remitted. (*Post, pp.* 685, 686.)

FROM HAMILTON.

Appeal from Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—T. M. McConnell, Chancellor.

Cook & Swaney, Meacham & Gaughy, and Spears & Lynch, for complainants.

T. Pope Shepherd and Murray & Latimore, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

Bills, original, amended, and supplemental, filed against certain proprietors of disorderly houses and their inmates, and the owners of some of the houses wherein the illegal business is carried on, in Chattanooga, to suppress all of the houses as nuisances by permanent injunction and to perpetually enjoin the owners from leasing the houses for such unlawful purpose. These houses are located in what is known as the "red light district" of Chattanooga, covering parts of Florence and Helen streets, most of them adjoining each other, and all near together. The bill was filed by private citizens owning property in the neighborhood, that is, within a block, or two or three blocks, on the ground of special and peculiar injury to them, in marring the comfort of their homes, and injuring the rental and sale value of their property. Originally there were very many complainants, but as to most of them the bills were dismissed on their own motion, and they were taxed with all of the costs accrued to that time, by the chancellor. Others

entered no formal dismissal, and, while remaining nominally complainants, have really abandoned the case, so that there are now left only five active complainants. Their names are H. A. Weidner, H. Fritts, Joseph Josephs, H. Koblentz, and F. E. Tyler. A decree according to the prayer of the bill was rendered against all of the defendants, but only the following of them appealed to the court of civil appeals, viz.: J. C. C. Garner, O. E. Pooler, Laura Hines, Bessie McBee, Ada Culver, Lucile Martin, Pauline Miller, Nellie Gray, Sallie Smith, Lillian Sterling, and Annie Bouley. The two first were proceeded against as owners of the property, or some of it. Laura Hines, Ada Culver, Lillian Sterling, and Annie Bouley were proceeded against as madames, or proprietors of houses, and the others as inmates.

The court of civil appeals affirmed the decree of the chancellor, and thereupon the case was brought to this court by the writ of *certiorari*. It is insisted in behalf of petitioners, defendants below, that the evidence is insufficient to support the decree, that the evidence does not sustain the charge that complainants suffered any injury in person or property different in kind from that suffered by the general public, and that, in any event, the evidence does not point particularly to any one of the several defendants sued as proprietors and inmates, but only in a general way to all of the "red light district."

It is claimed by defendants, as matter of law, that no judgment of abatement as to the individual houses

Weidner v. Friedman.

can be rested on such general and indefinite evidence. On the other hand, it is averred by complainants that there is evidence in terms implicating all, at least in a general way, and that this must be held to include each. Likewise the complainants put forward the proposition of law that all can be proceeded against as being jointly engaged in the commission of a nuisance, and held liable, even though no conspiracy between them be proven, on the ground that they are so near together locally, and their operations are so synchronous, that they must be treated as together creating the nuisance complained of. The rule is also invoked that, where there is a concurrence between the chancellor and the court of civil appeals, this court will not reverse, if there is any evidence to support such concurrence. It is claimed by complainants that there is evidence to support such concurrence on the point of special damage peculiar to the complainants, as distinguished from the general public; and they point to the fact that defendants do not deny that they, respectively, are proprietors and inmates of disorderly houses on the streets mentioned.

There is no doubt that the keeping of a disorderly house is a nuisance. It was so at common law, and is so under our statute. It is a misdemeanor, and the ordinary remedy is in the criminal court, which court can act most effectively by fine and imprisonment, and judgment of abatement. The chancery court has only a limited jurisdiction, which is defined in *Weakley* v. *Page*, 102 Tenn., 179, 53 S. W., 551, 46 L. R. A., 552,

Weidner v. Friedman.

as the power to grant relief at the suit of a private person only when he can prove special and peculiar injury to himself, different in kind from that suffered by the general public. That case is in accord with the weight of authority in other jurisdictions. Everywhere the powers of the court are confined within the narrow limits there laid down, and some cases take even a more restricted view. We are not disposed to expand and extend the doctrine further by construction. There would, by such course of decision, result extreme danger to the usefulness of the chancery court, the danger of overwhelming the court with a mass of litigation which would occupy its time to the exclusion of the vast range of its ordinary duties. The danger is well illustrated by the history of the present case as disclosed by this record. A preliminary injunction of a very drastic character was issued against defendants. They obeyed for a time, and left the district, that is, the "red light district," but afterwards returned, and renewed their former way of living. Then ensued two proceedings for contempt, preserved and presented here in four large volumes, in addition to the two large volumes embracing the main case. These contempt proceedings were brought to punish defendants for resuming their unlawful business in violation of the injunction. Fines and imprisonment were imposed. These proceedings are not distinguishable from the ordinary prosecutions against such offenders in the criminal court, except in the form of them, and the charge that they violated an injunction, instead of the criminal law. It is easy to

Weidner v. Friedman.

see how the offense could be, and would be, again and
again repeated, after receiving the punishment of $50
fine, and ten days' imprisonment, all that the chancery
court can impose for a contempt. It is true that this
may be said of any case in which the chancery court
undertakes to suppress a nuisance, particularly any
nuisance of the kind involved in the case now before
us. This should be a warning to the court to be ex-
tremely careful in assuming jurisdiction of such cases,
confining the exercise of its powers in this regard within
the narrowest limits consistent with duty.

Should it assume jurisdiction in one bill to suppress
a whole settlement of such people? We think not. The
task should be left to the criminal court, where it most
properly belongs. It is one thing to bring before the
court a single house of the kind, with its inmates, and
quite another to hale before the court a congeries of
such houses, and troops of women occupying them. In
the first case the court can carefully and adequately
examine into and decide the question whether the single
house in question has been instrumental in causing dam-
age to nearby owners of a kind special and peculiar to
them as distinguished from that done to the public at
large. But where a large number of such persons are
brought before the court for several such houses, it is
practically impossible to apportion the blame, or to as-
certain from the evidence how much each house is re-
sponsible for the special injury claimed to have been in-
flicted; so that it must result, as in the present case, in
a contention that all must be held equally guilty, be-

cause of the fact that the number of such houses so congregated causes crowds of men and boys to gather on the streets and go in and out of these resorts, the use of profane and vulgar language in the streets by men who gather there, the traipsing of the women, denizens of such houses, from one house to the other, or along the street, in pursuit of a man or men, the occasional exposure of person on the part of some woman in a house or houses not identified or distinguished from the mass of houses; in short, a jumbled aggregation of general evidence directed to no house in particular, but to all of the houses as an assemblage of illegal resorts. Relief in such a case must necessarily rest upon the postulate that the chancery court has power to break up and destroy such a nest of vice, although it is unable to see from the evidence from what special house the injury proceeded which is the necessary prerequisite to give the court jurisdiction. The task is too much for the chancery court. It cannot accomplish it. On the other hand, it can be accomplished by the criminal court. There no special damage to private persons need be proven. The crime of conducting a disorderly house, or of acting as inmates of one, or of renting a house to be used for such purpose, is all that need be proven. All persons so offending can be punished, not merely by a small fine and short imprisonment, but by heavy fines and imprisonment for any term less than twelve months, and the houses can be broken up.

We have proceeded thus far without mentioning another objection to complainants' claim to relief in the

chancery court, if the other objections mentioned were out of the way. That is laches. This "red light district" has been in operation in Chattanooga twenty-five or twenty-six years, according to the witnesses for complainants themselves; some witnesses say, from thirty to forty years. Parties who apply to a court of chancery for injunctive relief must apply promptly, on the penalty of refusal to entertain the bill because of laches. In *Caldwell* v. *Knott,* 10 Yerg., 210, 212, where the nuisance complained of was a milldam, the court held that a delay of ten years, without more, was too much, and the court referred with approval to the case of *Weller* v. *Smeaton,* 1 Cox, 103, and *Reid* v. *Gifford,* 6 Johns. Ch. (N. Y.), 19, wherein it was held that three years' delay was too long. These cases were referred to and approved in the case of *Madison* v. *Copper Co.,* 113 Tenn., 331, 351-355, 83 S. W., 658, in which many other cases were cited showing that even a much shorter time would serve to bar relief in equity under peculiar facts; and it was said in that case (p. 355) that, although the defense of laches had not been raised in the lower court by the parties, this court could itself raise it when it appeared on the record. In the present case there was a delay of, not three years, or of ten years merely, but for more than a quarter of a century.

The result is that the original, amended, and supplemental bills must be dismissed as to the complainants still remaining before the court. The dismissal of the said bills will have no effect upon the contempt proceedings. It was the duty of defendants to obey the in-

junction, and their failure to do so was a contempt of court for which they should be punished. We are of the opinion, however, that the imprisonment should be remitted, because the injunction order was such as would have been superseded, if timely application had been made therefor, since by this order the chancellor decided on the application for a temporary injunction the merits of the cause in advance of a hearing thereon.

The cause will be remanded to the chancery court of Hamilton county for the enforcement of the judgment for contempt, as herein modified, and with directions to dismiss the bills when these matters are finally disposed of.

The defendants found guilty under the respective contempt proceedings will pay the costs of these proceedings in the chancery court in so far as they are unadjudged. Defendants to the respective contempt proceedings in this court will pay the costs of this court and the court of civil appeals.

The complainants still remaining such in the record will pay all of the unadjudged costs of the chancery court. The five active complainants, who have prosecuted the original cause in this court, and in the court of civil appeals, will pay the costs of said original case in both courts.

It follows that the decrees of the court of civil appeals and of the chancellor in the main case are reversed, while the judgments of both of these courts in respect of the contempt proceedings are modified and affirmed.