# *ALADDIN INDUSTRIES, INC. v. ASSOCIATED TRANSPORT, INC. et al.

# ALADDIN RADIO INDUSTRIES, INC. v. ADKINS TRANSFER COMPANY, INC., et al. —323 S. W. (2d) 222.*

Middle Section.   August 6, 1958.

Rehearing denied December 5, 1958.

Certiorari denied by Supreme Court April 8, 1959.

---

* Certiorari denied by United States Supreme Court, *sub nom.* McCrary v. Aladdin Radio Industries, Inc., 80 S. Ct. 117, 4 L. Ed., (2d) 104.

330

332

Waller, Davis & Lansden, Nashville, Walton H. Hamilton, Washington, D. C., all for Aladdin Industries, Inc., and Aladdin Radio Industries, Inc.

Cooper, Mitch & Black, Birmingham, Ala., Williams, Harwell, Howser & Thomas and Moore, Crownover, Branstetter & Folk, Nashville, for Douglas McCrary and others.

FELTS, J.   These were contempt cases, ancillary to the main cases above styled, in which we affirmed the Chancellor's decrees punishing appellants[1] for contempt for violating the temporary injunction granted by him to preserve the *status quo* pending a hearing and determination of the cases (first case, 42 Tenn. App. 52, 298 S. W. (2d) 770; second case, Memo op. July 27, 1956, unreported).

The contemners in both cases joined in a petition to the Supreme Court of the United States for the writ of certiorari. That Court granted the writ, vacated our decrees, and remanded the cases, in an opinion in these words:

"No. 116. Douglas McCrary, M. M. Bratton, et al., petitioners, v. Aladdin Industries, Inc. * * * Per Curiam: The petition for writ of certiorari is granted. The judgment of the Court of Appeals of the State

---

[1] In the first case the Chancellor found 14 individuals and a labor union guilty of contempt and sentenced each of the men to three days in jail and the union to pay all the costs. In the second case he found five men guilty of contempt and fined each $50 and costs.

of Tennessee, Middle Division, is vacated and the case is remanded for consideration in light of Teamsters, Chauffeurs, Helpers & Taxicab Drivers, etc. v. Kerrigan Iron Works, Inc., 353 U. S. 968, 77 S. Ct. 1055, 1 L. Ed. (2d) 1133.'' McCrary v. Aladdin Industries, Inc., 355 U. S. 8, 78 S. Ct. 12, 2 L. Ed. (2d) 22.

And the Court's mandate was that our decrees were vacated and the cases remanded to this Court ''for consideration in light of Teamsters [etc.] v. Kerrigan Iron Works, Inc., 353 U. S. 968, 77 S. Ct. 1055, 1 L. Ed. (2d) 1133.'' The Kerrigan decision reversed our decree (Kerrigan Iron Works, Inc. v. Cook Truck Lines, Inc., 41 Tenn. App. 467, 296 S. W. (2d) 379) in an opinion as follows:

"No. 818. Teamsters, Chauffeurs, Helpers & Taxicab Drivers, Local Union No. 327, et al., Petitioners, v. Kerrigan Iron Works, Inc., et al. * * * Per Curiam: The petition for writ of certiorari is granted and the judgment of the Court of Appeals of Tennessee is reversed. Weber v. Anheuser Busch, Inc., 348 U. S. 468, 75 S. Ct. 480, 99 L. Ed. 546; General Drivers, etc. v. American Tobacco Co., 348 U. S. 978, 75 S. Ct. 569, 99 L. Ed. 762.'' 353 U. S. 968, 77 S. Ct. 1055, 1 L. Ed. (2d) 1133.

For consideration of these cases in the light of that case, we restored them to the docket for hearing, and oral arguments have been heard and briefs filed by both sides, as to the decrees we should enter under the mandate.

Appellants contend that the Kerrigan case is a precedent for these cases, requiring us to reverse the Chancellor's decrees and discharge appellants as contemners; that it shows that the Chancellor had no jurisdiction of

the subject matter in these cases, because that was a labor dispute which had been pre-empted by federal from state power; and that the Chancellor's temporary injunction was void and might be contemned with impunity.

Appellees insist that the Kerrigan case is no precedent for these cases; that the Chancellor had jurisdiction to determine all the questions, including that of his own jurisdiction, and to grant a temporary injunction to preserve the *status quo* pending such determination; that appellants could not collaterally attack or flout the injunction, but were bound to respect it pending a direct and orderly review of it; and that their defiance of it was contempt for which it was the Chancellor's duty to punish them.

It would seem that if the Supreme Court had regarded its ruling in the Kerrigan case as a precedent requiring reversals in these cases, it would have entered the reversals, as it did in that case; and that the fact that it remanded the cases for consideration in the light of that case, indicates that they may be ruled by it or may be distinguished from it, either on a federal ground or a non-federal ground adequate to support the Chancellor's decrees.

It is true these cases and the Kerrigan case had certain similarities or characteristics in common which, without referring to the differences, we stressed and emphasized in our former opinions (Kerrigan, 41 Tenn. App. 467, 296 S. W. (2d) 379; Aladdin, 42 Tenn. App. 52, 298, S. W. (2d) 770), because we thought they were determinative and called for the conclusion expressed by us. But there are at least these two obvious and important differences between that case and these:

*1. Differences in parties, pleadings, and issues in the main suits.*

(a) The Kerrigan case was a suit by a shipper against *both* the carriers and the *labor union and its agents;* and the relief sought was an injunction (1) to require the carriers to continue their service and (2) to enjoin the union and its agents from "concerted" conduct alleged to be "a conspiracy" and an "illegal boycott" to force complainant to accede to the demands of the other union striking and picketing complainant's plant.[2]

(b) In the main Aladdin cases the suit was by a shipper against the carriers alone. No labor union and no union agent was a party to the bill. The only relief sought was an injunction to require the carriers to continue their customary service to complainant's plant. While the bill did state, on information, that the reason the carriers refused to render the service was that their employees would not cross another union's picket line at the plant, it did not state or show that any of such employees were union men or in anywise concerned in any labor dispute.[3]

---

[2] In the Kerrigan case the bill of complaint alleged, among other things: "Complainant alleges that the combined and concerted action among the members of the defendant Local No. 327 and by said members and the carriers which employ them, including defendants, is in law an unlawful conspiracy and constitutes an illegal boycott, the purpose of such concerted action being to deprive complainant of public carrier service and to thereby force complainant to accede to the terms demanded by the other union conducting a picket line at complainant's plants, which complainant has no legal obligation to do."

[3] The original bill of complaint (substantially the same in both Aladdin cases) did not refer in any way to appellant union, Local 327 of Teamsters, etc., or any of its agents or any of the other appellants. While the bill did refer to another union picket line at the plant, it did so only to show the irrelevance of that matter. It averred, on information and belief, "that said pickets in the vicinity of complainant's said plant do not furnish the defendants with a legal or sufficient excuse for failing and refusing to carry freight to or from the complainant's said plant."

## 2. *Kerrigan was the main suit and these were ancillary.*

(a) The Kerrigan case was the main suit against the carriers, the union and its agents. There was no question of contempt. Defendants respected the authority of the court to try the case, and brought up its final decree for direct review by appeal. The only question was whether the action of the Chancellor, in assuming jurisdiction and rendering the final decree, was correct or not, and if not, the decree would be reversed though not void but only voidable or erroneous.

(b) These cases were not the main suits but ancillary contempt proceedings therein, under the same style. Appellants did not seek any orderly review, but flouted the temporary injunction as void and defied the court as a usurper. After being adjudged in contempt by the Chancellor, they brought up the contempt decree by appeal. The question is whether the temporary injunction was void. This depends on whether the Chancellor had jurisdiction to grant it, and this is to be determined upon the bill on which the court assumed jurisdiction and issued the temporary injunction.

Do these cases, despite these differences, fall within the principle of the Kerrigan decision? What is that principle? It is not stated in that opinion but is to be sought in the cases there cited, particularly the Weber case, since the other case cited, the American Tobacco Company, was itself a *per curiam* citing the Weber case and depending on it, as we understand.

In the Weber case a labor union, the bargaining agent of employees of complainant, went on strike and picketed complainant's plant to compel it to insert, in their proposed new collective agreement, a promise that it would

have its millwright work done only by contractors who had collective agreements with the union. Complainant charged the union with "an unfair labor practice" under sec. 8(b) (4) (D) of the Taft-Hartley Act, 29 U. S. C. A. sec. 158(b) (4) (D), before the National Labor Relations Board, and the Board dismissed this charge.

In the meantime, before the Board had acted on the charge, complainant sued the union in the state court to enjoin the strike and picketing, alleging it constituted "a secondary boycott" under state law, and also *"an unfair labor practice"* under section 8(b) (4) of the federal Act. This latter averment was held to make the case outside state power and within exclusive jurisdiction of the Board. The Court said:

"We realize that it is not easy for a state court to decide, merely on the basis of a complaint and answer, whether the subject matter is the concern exclusively of the federal Board and withdrawn from the State * *. But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." 348 U. S. 481, 75 S. Ct. 488, 99 L. Ed. 558.

It seems that this is the principle of the Weber case, and that the Court held that the Kerrigan case was brought within this principle by the averment of the bill that defendants (the union and others) were guilty of

"concerted action", "conspiracy", and "an illegal boycott", to force complainant to yield to the other union demands, and the state court erred in assuming jurisdiction; but whether this action was *void*, or *merely voidable* or *erroneous*, does not appear.

■ In these cases the question of the Chancellor's jurisdiction of the subject matter is to be determined upon the state of the case at the time the court assumed jurisdiction and issued the temporary injunction—that is, upon the allegations of the original bill, which must be taken as true for the purpose of testing jurisdiction. 1 Crownover's Gibson's Suits in Chancery, 5th ed., sec. 146; Myers v. Wolf, 162 Tenn. 42, 50, 34 S. W. (2d) 201, 203; Malden Trust Co. v. Brooks, 276 Mass. 464, 177 N. E. 629, 80 A. L. R. 1028; Moore v. Chesapeake & O. R. Co., 291 U. S. 205, 210, 54 S. Ct. 402, 78 L. Ed. 755, 759; Brown v. Coumanis, 5 Cir., 135 F. (2d) 163, 146 A. L. R. 1241.

■ The averments of the original bill (practically the same in each case) made a case where a shipper was entitled to an injunction to require the carriers to continue the service, which case was within the Chancellor's jurisdiction, his being the court of general equity jurisdiction in Tennessee. Aladdin Industries v. Associated Transport, 42 Tenn. App. 52, 298 S. W. (2d) 770, 775, and authorities there cited.

■■ Upon the averments of the bill, taken as true, it was within the Chancellor's power to grant the temporary injunction to preserve the *status quo* pending determination of the cases. The *status quo* may be a condition of action, as well as a state of rest, and in such case it is proper to enjoin carriers to continue the

service (Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., C. C., 54 F. 730, 741, 742, 19 L. R. A. 387, 393), and the injunction runs not only against the parties defendant (carriers) but also against their officers, agents and employees without their being made parties to the suit. Aladdin Industries v. Associated Transport, supra, 42 Tenn. App. 52, 298 S. W. (2d) 776, and authorities were cited; Frankfurter and Greene, The Labor Injunction, 123-133, and cases there cited.

No labor union and no union agent was made a party to the bill. Nor was any relief sought against any labor union or any union agent. The temporary injunction ran against the carriers, "their officers, agents, and employees". But the bill did not refer in any way to appellant union, Local 327, or to any of its officers or members, or to any of the appellants. Nor did it contain any averment of any labor dispute or union conduct within the federal Act.

This temporary injunction was served on defendants and their employees were notified of it, and they complied with it and rendered carrier service for some two months, when they began to disobey and flout the injunction. Thus, when they became guilty of contempt, the only pleading was the bill, which contained no averment to take the case out of state power or to make a case preempted by federal authority.

Then came a supplemental bill, which only added more carriers, and petitions for contempt, which did not change the nature of the case already before the Chancellor, but only brought before him the fact of appellants' prior contempt. The petitions charged that the two unions (Local 327 and Local 5003) and their officers and agents

had conspired to violate the temporary injunction by inducing the carriers' employees not to perform the service; and that Local 327 had placed persons at the plant carrying its sign, under the pretense that it was picketing to organize complainant's office employees.

But these allegations were of acts of contempt, not of acts of "concerted activities" under sec. 7 of the federal Act, or of a union "unfair labor practice" under sec. 8(b) (4) of that Act; and we think such averments did not divest the Court of the jurisdiction it had already taken of the cases, or make the case one pre-empted under federal authority, or relieve appellants of the consequences of their prior contempt for their defiance of the temporary injunction and of the court's authority.

It is true in our former opinion (42 Tenn. App. 52, 298 S. W. (2d) 777, 779-783), we assumed, *arguendo*, that the refusals of appellant truck drivers to cross the other union picket line and render the carrier service, as required by the temporary injunction, were "concerted" refusals, and held that even so they were neither "concerted activities" under sec. 7, nor a union "unfair labor practice" under sec. 8(b) (4) of the federal Act.

But in fact such refusals were not concerted. The answers of appellant truck drivers stated that the union had not advised them but each individual had determined the matter for himself; and while they confessed they had violated the injunction by their refusals, each stated that his refusal was caused by his fear that violence would be done himself or his family if he crossed the other union's picket line; and each testified to the same effect.

■ These statements in appellants' answers and in their testimony, that each of them was acting individually and separately, and not in concert, are binding upon them and estop them to contend to the contrary. Crownover's Gibson's Suits in Chancery (5th ed.), sec. 467; Wilson v. Winters, 108 Tenn. 398, 67 S. W. 800; Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S. W. 313; Fagg v. Benton Motor Co., 193 Tenn. 562, 564, 246 S. W. (2d) 978, 979.

■ Since the acts of each of the individual appellants in defiance of the temporary injunction were separate and individual acts, and not "concerted activity", we understand they could not be a "concerted activity" within the protection of sec. 7 of the federal Act. N. L. R. B. v. Illinois Bell Tel. Co., 7 Cir., 189 F. (2d) 124, 127-129. Nor could such acts of these individuals, unconnected with any union, be a union unfair labor practice under sec. 8(b) (4) of that Act, which by its terms applies only to a "labor organization or its agents".

■ As far as appellant union is concerned, its placing a person with its sign at complainant's plant was neither *bona fide* nor for a lawful purpose, but was done solely to defy the court and defeat the temporary injunction requiring the carriers and their employees to render the service. The Chancellor so found and, as pointed out in our former opinion, the proof amply sustained his finding. We think the union cannot invoke the federal Act to shield its willful defiance of the state court.

■ So, in the main Aladdin cases, we think the subject matter was not preempted by the federal act and withdrawn from state power but was within the Chancellor's

jurisdiction. But irrespective of whether he had juris-
diction in the sense that he could have entered final
decrees that would have ultimately been held free from
error, he had jurisdiction to determine all the issues,
including that of his own jurisdiction, and to grant a
temporary injunction to preserve the *status quo* pending
such determination.

And pending such determination no person
was at liberty to defy the court or to aid any party
defendant in a breach of the injunction. Such an injunc-
tion, however erroneous, must be obeyed until set aside
by the court granting it or by an appellant court. State
v. Ragghianti, 129 Tenn. 560, 567, 167 S. W. 689, 690;
Nashville Corp. v. United Steelworkers, etc., 187 Tenn.
444, 450, 215 S. W. (2d) 818, 820; Churchwell v. Callens,
36 Tenn. App. 119, 252 S. W. (2d) 131; United States v.
United Mine Workers of America, 330 U. S. 258-385, 67
S. Ct. 677, 91 L. Ed. 884-961.

These cases distinguish between an order that
is *void* and one that is only *voidable* or *erroneous,* and
recognize that a void injunction binds no one. If a court
should go so clearly and so far outside of its jurisdiction
as to act, not as a court, but as a usurper, its order would
be void, would bind no one, and could be disregarded by
any one with impunity. The matter is stated thus by Mr.
Justice Frankfurter:

"Only when a court is so obviously traveling out-
side its orbit as to be merely usurping judicial forms
and facilities, may an order issued by a court be
disobeyed and treated as though it were a letter to
a newspaper. Short of an indisputable want of
authority on the part of a court, the very existence

of a court presupposes its power to entertain a controversy, if only to decide, after deliberation, that it has no power over the particular controversy." United States v. United Mine Workers of America, supra, 330 U. S. 309-310, 67 S. Ct. 704, 91 L. Ed. 921.

■ Where a court has general equity jurisdiction and its action is invoked by proper pleadings upon a matter fairly debatable, at least not obviously outside such jurisdiction, the court has authority to determine the issues, including that of its own jurisdiction, and to grant a temporary injunction or stay order to preserve the *status quo* pending such determination, and to punish for contempt disobedience of such order or injunction.

This is a matter of state law, or rather a general principle of equity which is universally recognized and applied by all courts, both federal and state. We cite some illustrative cases applying this rule:

In Seaward v. Paterson, (Eng.) L. R. [1897], 1. Ch. Div. 545, it was held that a Court of Chancery *has jurisdiction* to punish one not a party to the suit, not a party to the injunction and not bound by it, for contempt in defying the court by aiding a defendant in committing a breach of the injunction. It was there said by A. L. Smith, L. J.:

"As regards the law, I have myself no doubt that if a person who knows that an injunction has been granted aids and abets in committing a breach of it the Court of Chancery *has jurisdiction to commit him for contempt,* although he is not a defendant in the action, and is not a person against whom the injunction has been granted" (italics ours).

In Pitcock v. State, 91 Ark. 527, 121 S. W. 742, 744, 134 Am. St. Rep. 88, 93, it was held that a Court of Chancery has jurisdiction to determine all the issues of a case, including that of its own jurisdiction, and to grant a temporary injunction to preserve the existing *status* of the subject matter, and to punish for contempt disobedience of such temporary injunction. It was there said:

"In considering this question the distinction must not be overlooked between the violation of a preliminary injunction preserving the status quo of the subject-matter of the litigation during the pendency thereof and the final decrees of courts requiring the parties to do or not to do the things enjoined upon them by such decrees. In the latter class of cases, if the decree was rendered without jurisdiction, it can be disobeyed with impunity, for no one owes obedience to a void decree, as it is without any force whatever * * * On the other hand, a court possesses the power of hearing and determining the question of its jurisdiction, and may, while so doing, require the parties to preserve the status of the subject-matter. United States v. Arredondo, 6 Pet. 691, 8 L. Ed. 547; United States v. Shipp, 203 U. S. 563, 27 S. Ct. 165, 51 L. Ed. 319, [8 Ann. Cas. 265]."

In State v. Patten, 41 N. M. 395, 69 P. (2d) 931, 933, the Court said: "The test of the jurisdiction of a court is whether or not it had *power to enter upon the inquiry;* not whether its conclusion in the course of it was right or wrong."

This general principle of equity has often been applied in the federal courts. Some of the cases so applying it

are: United States v. Shipp, 203 U. S. 563, 27 S. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265; Howat v. State of Kansas, 258 U. S. 181, 189, 190, 42 S. Ct. 277, 66 L. Ed. 550, 559; Carter v. United States, 5 Cir., 135 F. (2d) 858, 861; United States v. United Mine Workers of America, supra.

In the Shipp case a man at Chattanooga, under sentence of death in the state court for rape, sought a writ of *habeas corpus* in the United States Circuit Court. That Court held his petition presented no question of federal jurisdiction. He appealed to the Supreme Court of the United States and obtained in that Court an order staying all proceedings against him and retaining custody of him pending his appeal. On the same evening the newspapers carried a story of the stay, and a mob broke into the jail and lynched him.

Shipp, the Sheriff, was charged with a conspiracy in connection with the lynching, and was brought before the Supreme Court to show cause why he should not be held in contempt. He objected that since the Court had no jurisdiction of the subject matter, its order might be contemned with impunity. The Court overruled this contention and held that even if it had no jurisdiction of the appeal, it still had jurisdiction to determine the question and to preserve the *status quo* pending such determination, and to punish Shipp for contempt.

In the Carter case, Coumanis obtained an injunction enjoining Carter from picketing his restaurant and interfering with delivery of food, beverages, etc., to his place. Carter violated this injunction and though the District Court had no jurisdiction to issue the injunction (Brown v. Coumanis, supra, 135 F. (2d) 163), nevertheless it

had jurisdiction to punish Carter's contempt. The Court said:

"It cannot now be broadly asserted that a judgment is always a nullity if jurisdiction of some sort or other is wanting. It is now held that, except in case of plain usurpation, a court has jurisdiction to determine its own jurisdiction, and if it be contested and on due hearing it is upheld, the decision unreversed binds the parties as a thing adjudged" (citing cases). Carter v. United States, 135 F. (2d) 861.

In Howat v. State of Kansas, supra, under a Kansas statute Gen. St. 1915, sec. 2957, a state court issued an injunction prohibiting defendants from calling a general strike in the mines. Defendants treated the injunction as void and disregarded it, upon the theory that the statute was unconstitutional; and the court punished them for contempt. They brought the question to the Supreme Court of the United States. That Court held that they were bound to obey the injunction whether the statute was constitutional or not. The Chief Justice said:

"An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is

reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority to be punished.'' (citing cases). [258 U. S. 181, 42 S. Ct. 280.]

All of the federal cases above cited, with others, were approved in United States v. United Mine Workers of America, supra. In that case the District Court issued a temporary order restraining defendants from calling a strike. Defendants disobeyed the injunction and were punished for contempt. It was held that whether the Court had jurisdiction to grant final injunctive relief or not, it had jurisdiction to determine the question of its jurisdiction and to issue a temporary restraining order to preserve the *statuts quo* pending such determination, and to punish disobedience of the order as contempt.

It is our conclusion that upon this general principle of equity the Chancellor, irrespective of the question of his ultimate jurisdiction, had jurisdiction to determine the question, and to issue a temporary injunction preserving the *status quo* pending such determination, and to punish appellants for contempt for disobeying the injunction.

A decree will be entered in this Court affirming the Chancellor's decrees in these ancillary contempt cases and remanding them to the Chancery Court, Part II, for further proceedings not inconsistent with this opinion. The costs are adjudged against appellants.

Avery, C. J., (Western Section) and Shriver, J., concur.

On Petition to Rehear.

FELTS, J. Appellants have filed a petition for rehearing, complaining of our affirmance of the Chancellor's decrees punishing them for contempt for flouting his temporary injunction. They assert we overlooked, or disregarded, controlling decisions of the Supreme Court of this State which required us to hold this injunction was void and could be contemned by them with impunity.

The decisions to which petitioners refer, as having establishd the law of this State contrary to our holding, and on which they claim to be discharged as contemners, are these: Oliver v. Local or Subordinate Lodge No. 656, etc., 182 Tenn. 236, 185 S. W. (2d) 525; Manning v. Feidelson, 175 Tenn. 576, 136 S. W. (2d) 510; Howell v. Thompson, 130 Tenn. 311, 170 S. W. 253.

The Oliver case was a suit by discharged employees for reinstatement, back pay, and damages, upon the allegation that though not members of the union, they had been discharged under a maintenance-of-union-membership clause. The Court held that this was a charge of an unfair labor practice under sec. 8(a) (3) of the federal Act, and the state Court had no jurisdiction to enter any order except to dismiss the suit. Cf. International Association of Machinists v. Gonzales, 356 U. S. 617, 78 S. Ct. 923, 2 L. Ed. (2d) 1018.

In the Manning case, the National Labor Relations Board found that an employer had been guilty of an unfair labor practice in discharging its employees, and made an award for back pay to them. By compromise settlement, the employer paid $20,000 to the Board's

Regional Director, as trustee, to distribute to the employees. One of them sued the trustees to enjoin him and control the manner of distribution. It was held that exclusive jurisdiction of the matter was in the Board and the Court could only dismiss the suit.

In the Howell case [130 Tenn. 311, 170 S. W. 255] the Attorney General of the State applied for a supersedeas to vacate a temporary injunction of the Chancellor, enjoining him from proceeding against complainants under the Nuisance Act. The Court denied the application, holding that, under our practice, supersedeas issues to supersede an interlocutory order only where such order (1) "trenches upon final relief" and (2) is "of a nature to be actively enforced"; and that this injunction had neither of these features.

Thus, it is seen none of these decisions supports petitioners' claim that the Chancellor's temporary injunction was void and could be contemned by them with impunity. In none of those cases was there any question of contempt, or did any party defy the Court as a usurper, as petitioners did here. Instead, all the parties respected the Court's authority to hear the case and determine the question of its jurisdiction.

Along with those cases, petitioners, also rely on our case of Churchwell v. Callens, 36 Tenn. App. 119, 252 S. W. (2) 131. There, this Court affirmed the Chancellor's decree punishing defendant for contempt for disobeying a temporary injunction. Obviously, that case does not support, but negatives, petitioners' claim.

In the above cited cases, the Court used some general expressions, on which petitioners rely, as follows:

(1) In the Oliver case: "[T]his Court held that our State Courts are without jurisdiction of controversies under the National Labor Relations Act, 29 U. S. C. A. sec. 151 et seq., and it follows, therefore, that any order that we might enter, except that of dismissal for lack of jurisdiction, would be void. Manning v. Feidelson, supra, 175 Tenn. at page 578, 136 S. W. (2d) 510." 182 Tenn. 240, 185 S. W. (2d) 527.

(2) In the Howell case: "If the court is without jurisdiction of the subject-matter in which it is undertaking to proceed, its orders are void. An injunction made in respect to a subject-matter beyond the jurisdiction of the court is a mere nullity, and is binding on no one. It may be disregarded. State v. Ragghianti, 129 Tenn. 560, 167 S. W. 689." 130 Tenn. 323, 324, 170 S. W. 256.

(3) In the Churchwell case. "A void judgment binds nobody, but a voidable judgment binds everybody and justifies every act done under it until reversed or modified on appeal. Gibson, Sec. 814, note 43.

"If the Court has jurisdiction of the person and of the subject matter, it is a valid order though it be erroneous, and disobedience of same by a party affected is a contempt of court. In re: Vanvaver, 88 Tenn. 334, 12 S. W. 786; Life Ins. Co. v. Fisher, 5 Hig. 232.

Such an order must be obeyed until the party obtains a dissolution or discharge, or he is in contempt. Gibson Secs. 846 and 847; 12 Am. Jur. 408; 17 C. J. S.

Contempt sec. 14, p. 19.'' 36 Tenn. App. 131, 252 S. W. (2d) 131, 136.

It is familiar law that a decision is authority for the point or points decided, and nothing more, and that general expressions in an opinion are to be tken in connection with the case in which they were used, and when they go beyond that, they are not authority for another case. Cohens v. Virginia, 19 U. S. 264, 398, 5 L. Ed. 257, 290; Wright v. United States, 302 U. S. 583, 593, 58 S. Ct. 395, 82 L. Ed. 439, 445; National Life & Accident Ins. Co. v. Eddings, 188 Tenn. 512, 523, 221 S. W. (2d) 695, 699; State ex rel. Parker v. Dunn, 39 Tenn. App. 190, 209, 210, 282 S. W. (2d) 203, 212, and cases there cited.

So, it is clear when these general expressions are taken with the case in which they were used, none of them countenances petitioners' claim that the Chancellor's temporary injunction was void and could be defied with impunity.

The above cases, with others cited in our opinion (323 S. W. (2d) at page 228), distinguish between an order that is void and one that is only voidable or erroneous; and State v. Ragghianti, supra, applied that distinction. It was there held that a temporary injunction preserving the *status quo,* though granted *ex parte* and contrary to the statute, was not void but only voidable, defendant was bound to obey it while it remained in force, and was properly punished for contempt for disobeying it. The Court quoted the rule from Joyce:

'' 'Unless an injunction order is void upon its face for lack of jurisdiction on the part of the judge who granted it, it must be obeyed, *however erroneous* the granting of it may have been, until it is dissolved

on motion or appeal or some other method of direct review in the action in which it was granted.' 1 Joyce on Injunctions, sec. 247'' (italics ours). [129 Tenn. 560, 167 S. W. 690.]

The Court referred to Weaver v. Toney, 107 Ky. 419, 54 S. W. 732, 50 L. R. A. 105, where the injunction was void, because it was granted *ex parte,* required the holding of an election next day, and, if obeyed, would have accomplished all the relief sought. The Court distinguished that injunction, which would have determined the rights of the parties before a hearing, from the temporary injunction before it, which preserved the *status quo* pending a hearing and determination of the case. The Court said:

"The temporary injunction here issued might have put the defendant to some inconvenience and slight pecuniary loss, but the subject-matter of the litigation was left open for future investigation and determination." 129 Tenn. 568, 167 S. W. 691.

A similar case was Weidner v. Friedman, 126 Tenn. 677, 151 S. W. 56, 42 L. R. A., N. S., 1041. There, bills were filed to enjoin defendants from maintaining bawdy houses, and a temporary injunction was granted. Some of defendants violated it and were punished for contempt by the Chancellor. On appeal, the bills were dismissed because the Chancellor *had no jurisdiction* to entertain them, but this was held not to affect the contempt. The Court said:

"The dismissal of the said bills will have no effect upon the contempt proceedings. It was the duty of defendants to obey the injunction, and their failure to do so was a contempt of court for which they

should be punished.'' 126 Tenn. 685, 686, 151 S. W. 58.

That case was approved in Nashville Corp. v. United Steelworkers, etc., 187 Tenn. 444, 450, 215 S. W. (2d) 818, 820. There, the Court affirmed the Chancellor's decrees punishing defendants for contempt for violating his temporary injunction limiting picketing at a struck plant. The Court said:

"Regardless of whether or not the injunction was 'irregular or erroneous', 'it must while it continues in force be obeyed.' 28 Am. Jur., sec. 330, p. 504. In a note to the above quoted statement numerous cases are cited as authority therefor. See also Vanvabry v. Staton, 88 Tenn. 334, 12 S. W. 786; Weidner v. Friedman, 126 Tenn. 677, 151 S. W. 56, 42 L. R. A., N. S., 1041 * * *'' 187 Tenn. 450, 215 S. W. (2d) 820.

As will be noted, the Nashville Corp. case and the Churchwell case, supra, referred to the text in American Jurisprudence (12 Am. Jur. 408, 28 Am. Jur. 504), which cites, among others, these cases cited by us in our former opinion (323 S. W. (2d) at pages 228-231): United States v. Shipp, supra; Howat v. State of Kansas, supra; United States v. United Mine Workers, etc., supra; and Pitcock v. State, supra.

Also, the Churchwell case and the Nashville Corp. case cited approvingly the text of Gibson (2 Crownover's Gibson's Suits in Chancery (5th ed.)) which is, in part, as follows:

"The mandates of a Court of Chancery *must* in *all cases* be obeyed * * *without question,* or *evasion.* The party, upon whom the order or command of the

court operates, is *not allowed to speculate* upon the *equity* of the bill, or the *legality* or *regularity* of the order or decree, or the *writ* issued thereon; but his simple duty is to obey * * *'' Gibson, sec. 964 (italics ours). Quoted in 187 Tenn. 450-451, 215 S. W. (2d) 821.

Again the same authority (sec. 893) says:

"It matters not *what irregularities* may affect the proceedings, nor *what error* the Court, or Judge, may *have committed* in granting the injunction. * * * so long as the injunction is in force it must be *scrupulously observed,* and *implicitly obeyed.* And the defendant is *not allowed to sit in judgment* on the *equity* of the bill, or on the *rightfulness* of the *writ,* and *should not as to the jurisdiction;* his one duty is to obey" (italics ours). Cited in 36 Tenn. App. 131, 252 S. W. (2d) [136].

Thus, this says "in *all* cases", no matter *"what* error" the Chancellor may have committed in granting the injunction, it must be implicitly obeyed, as long as it remains in force, and the defendant is not "to speculate" or "sit in judgment" as to its "equity", or legality or "as to the *jurisdiction".*

This broad generalization of *"all cases",* of whatsoever error, must, of course, be taken with the distinction between a case of a void order and a case of a voidable or erroneous order; and, when so taken, it correctly states the general principle of equity which is the law of this State and is generally recognized by all courts, federal and state, and was applied in the cases cited and discussed in our opinion, 323 S. W. (2d) at pages 228-

231; see also cases cited in the Annotation, 12 A. L. R. (2d) 1059, 1066, 1078, 1079.

So, it is seen we have not, as petitioners assert, undertaken to change the law or to apply "novel procedure" in this case. Instead, we have applied only the general principle of equity which has long been the law in this State and has long been applied in other states and in the federal courts.

As we have seen, that principle is: Where the action of a court of general equity jurisdiction is invoked by proper pleadings upon a matter fairly debatable—not obviously and indisputably outside its jurisdiction—it has authority to determine all the issues, including that of its own jurisdiction, and to grant a temporary injunction to preserve the *status quo* pending such determination, and to punish defiance of it as contempt.

This is true even in a case which the Court, or an appellate reviewing Court, may ultimately have to dismiss for want of jurisdiction of the subject matter. "The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry; not whether its conclusion in the course of it was right or wrong". State v. Patten, 41 N. M. 395, 69 P. (2d) 931, 933; also cases cited in Annotation, 12 A. L. R. (2d) 1059, 1066, 1078-1079.

"Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may an order issued by a court be disobeyed * * * Short of an indisputable want of authority on the part of a court, the very existence of a court presupposes its power to entertain a con-

troversy, if only to decide, after deliberation, that it has no power over the particular controversy. * * *

\* \* \* \* \* \*

"* * * To say that the authority of the court may be flouted during the time necessary to decide is to reject the requirements of the judicial process." Mr. Justice Frankfurter, United States v. United Mine Workers, etc., supra, 330 U. S. 310, 311, 67 S. Ct. 704, 91 L. Ed. 921, 922.

As pointed out in our opinion (323 S. W. (2d) at pages 225-228) the bill, upon which the Chancellor's jurisdiction is to be tested, made a case within his jurisdiction, and alleged nothing to make a case pre-empted by federal power. So, he had jurisdiction to determine the issues, including that of his own jurisdiction, and to grant the temporary injunction to preserve the *status quo* pending such determination, and to punish defiance of it as contempt.

Thus, this case is distinguishable from Ex parte Twedell, Tex., 309 S. W. (2d) 834, on which petitioners rely, where a bill, to enjoin a union and its agents from picketing, alleged such a clear case of an unfair labor practice under sec. 8(b) (1) and (2) of the federal Act as excluded state action (see Weber case, supra, 348 U. S. 480, 75 S. Ct. 488, 99 L. Ed. 557).

Petitioners assert that our opinion "gives full approval to a procedure that circumvents the acts of Congress, the decisions of the Supreme Court of the United States, and, indeed, the decision of the Supreme Court of Tennessee".

This assertion is unsupported by any Tennessee decision cited by petitioners, or by any decision of the Supreme Court of the United States cited by them. It seems to be much the same kind of argument that was rejected by that Court in Amalgamated Clothing Workers of America v. Richman Bros., 348 U. S. 511, 518, 75 S. Ct. 452, 99 L. Ed. 600, 609.

The petition for a rehearing is denied at petitioners' cost.