**Ex parte Don R. EDMONDS and Fred Sturm.**

**No. A–10132.**

Supreme Court of Texas.

July 29, 1964.

Rehearing Denied Nov. 11, 1964.

**580**

Spurlock, Schattman & Cave, Fort Worth, for relators.

Simon & Simon, Fort Worth, for respondent.

HAMILTON, Justice.

Relator Don R. Edmonds is the City Manager and relator Sturm is the Mayor of the City of Hurst. About March 4, 1964, the City of Hurst instituted condemnation proceedings against W. E. Vincent and others in the County Court of Tarrant County. Commissioners to assess the damages were appointed by the County Judge. Hearing was held on March 19, 1964, at which hearing said Vincent and others appeared through their attorneys. Pursuant to this hearing an award was entered and filed. The City of Hurst deposited with the County Court the amount of the award. On March 18, one day before said hearing, W. E. Vincent and others requested the 153rd District Court of Tarrant County to issue a temporary restraining order enjoining the City of Hurst from entering upon the land sought to be condemned. The temporary restraining order was granted.

In violation of this order the City of Hurst, through its City Manager Edmonds and Mayor Sturm entered upon the land in question, whereupon they were cited for contempt and upon hearing both relators were found to be in contempt and were committed to jail in lieu of payment of a fine of $100.00 each. This court granted relators' motion for leave to file this proceeding and ordered relators released temporarily from the custody of the sheriff pending the hearing of the cause on the merits. Relators contend that the District Court was without jurisdiction to enter the restraining order and hold them in contempt for violation of said order, and for that reason the judgment finding them in contempt is void. They say that when the petition for condemnation was filed in the County Court that court obtained exclusive jurisdiction over the condemnation proceeding and that a district court has no jurisdiction to interfere with such proceeding.

We agree with this contention. It seems to be well settled in our state that the district court is without jurisdiction to enjoin the proceeding in a condemnation suit. State v. Giles, Tex., 368 S.W.2d 943; Gregg v. Lower Nueces River Water Supply District et al. (Tex.Civ.App., 1957), 303 S.W.2d 812, writ refused.

If the District Court was without jurisdiction to enter the restraining order, then the contempt proceeding based on it is likewise void. Ex parte Barrett, 120 Tex. 311, 37 S.W.2d 741 (1931). In that case the court had before it a situation in which a temporary restraining order was issued restraining the holding of an election. The order was disobeyed and the election officials were held in contempt by the District Court. The court said, at page 742 of 37 S.W.2d:

"The injunction was void, and the contempt proceedings based on it is likewise void."

In Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, (1948) this court said:

"* * * So, in so far as the injunction judgment entered by the trial court attempted to restrain peaceful picketing at, near, across or within 100 feet of the railway tracks across Pickett Street, it is void; and, since the testimony offered at the contempt hearing failed to show any other sort of picketing, the order of commitment for contempt is likewise void. One cannot be punished for contempt for violating an order which a court has no authority to make."

Respondents here attack the legality of the condemnation suit and the jurisdiction of the County Court to carry out such condemnations. They say that the condemnation proceedings are void and that the District Court does have jurisdiction to issue an injunction interfering with such proceedings. They rely on Lone Star Gas Co. v. City of Fort Worth, 128 Tex. 392, 98 S.W.2d 799, 109 A.L.R. 374 (1936) and Dallas County v. Plowman, 99 Tex. 509, 91 S.W. 221 (1906). Those are cases where injunction was allowed on the ground that the proceedings were void. In this case we have no such showing, although respondents do contend that the proceedings were invalid.

In this case the City of Hurst filed a petition in the County Court seeking condemnation. This petition complied with Article 3264, R.C.S. It described the land sought to be condemned by metes and bounds, showing it to be in Tarrant County, where the suit was filed. It stated the purpose for which the land was intended to be used, that is, "for the purpose of constructing and maintaining drainage easements". It named the owners of the land and stated that the City of Hurst and the owners were unable to agree upon the value of the land or the damages thereto.

■ Respondents complain of relators' pleading in that relators' petition did not properly describe the purpose for which the City of Hurst proposes to use the property in question. It says under this pleading it is impossible for the commissioners to establish the separate damages to the remainder of plaintiffs' land because they are not put on notice as to what sort of drainage will be used, whether underground or overground, or the origin of whatever fluid is to be drained or the destination of the fluids as drainage or the necessity for drainage. While these may be good exceptions to plaintiff's petition, the proper place to raise them is in the County Court where they are filed. A mere defect in pleadings does not make the proceedings void, as respondents contend. They may be subject to amendment after proper objection has been sustained.

■ While Article 3264, supra, does not require that the municipal corporation seeking to condemn property set out the particular statute which vests the city with the power of eminent domain, the City of Hurst in this instance did allege that it had power of eminent domain vested in it by virtue of Article 1107, R.C.S. Respondents seize upon this statement and attack the proceedings, contending that Article 1107 does not authorize condemnation proceedings by a city "for the purpose of constructing and maintaining drainage easements." Whether or not the City of Hurst has authority to condemn under Article 1107 is immaterial, because ample authority is given in Article 1109b, and no attack is made on the power of the city to condemn for drainage purposes under that statute.

■ The petition filed by respondents in the 153rd District Court requesting the injunction and temporary restraining order had attached to it the petition of the City of Hurst filed in the County Court asking to condemn the land in question, and a copy of the notice of hearing issued by the special commissioners. The only objection to these pleadings the respondents have made are as set out above. There is a total failure to show any invalidity of these proceed-

ings. In the absence of some showing in the petition requesting an injunction, that the proceedings are void, the court was without jurisdiction to grant the restraining order. We do not mean to say that if we had before us such a case wherein it would be difficult for the trial court to determine the jurisdiction that we would not hold that a temporary restraining order would be valid pending time for his determination of such matter. But where the petition for writ of injunction shows on its face that the condemnation proceedings are valid, and that the court in which they are filed has exclusive jurisdiction, then a district court is without jurisdiction to grant the temporary restraining order interfering with the proceedings.

Respondent relies on several federal cases for the proposition that a temporary restraining order must be obeyed, even though the court has no jurisdiction to enjoin the conduct in question. In United States v. United Mineworkers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), a federal district judge granted a temporary restraining order against the labor union to prevent a strike. The union violated the restraining order and was held in contempt. In upholding the judgment of contempt, the Supreme Court held that the courts had power to restrain strike activities when such relief was sought by the United States government, despite the Norris-LaGuardia Act. However, in the alternative, the Court also held the following in 330 U.S. at page 293, 67 S.Ct. at page 695:

> "In the case before us, the District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief. The defendants, in making their private determination of the law, acted at their peril. Their disobedience is punishable as criminal contempt."

However, it should be noted that the Court went on to say that:

> "Although a different result would follow were the question of jurisdiction frivolous and not substantial, such contention would be idle here. The applicability of the Norris-LaGuardia Act to the United States in a case such as this had not previously received judicial consideration, and both the language of the Act and its legislative history indicated the substantial nature of the problem with which the District Court was faced.

> "Proceeding further, we find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. * * *"

In the case before us there is no question of jurisdiction. As before stated, the pleadings of plaintiffs seeking the temporary restraining order affirmatively showed that the District Court had no jurisdiction to enjoin the condemnation proceedings in the County Court.

■ Respondents go further and rely on Smotherman v. United States, 186 F.2d 676 (1950), where the Tenth Circuit said:

> "Appellants had no right to determine for themselves whether the court had jurisdiction to restrain their acts. That was a matter for the court to decide at the hearing on the motion. If at that time, the court found it was deprived of jurisdiction under the Norris-LaGuardia Act, appellants were then entitled to have the restraining order set aside and injunctive relief denied, but until it was set aside by orderly judicial process they were bound at their peril to heed its mandate."

If this rule were applicable in Texas, it would be just as applicable to a temporary or permanent injunction as well as to a temporary restraining order. However, it is already settled in this state that an in-

junction which the district court has no jurisdiction to grant does not have to be obeyed and cannot be the basis of a contempt proceeding. Ex parte Barrett, 120 Tex. 311, 37 S.W.2d 741 (1931).

In Pitcock v. State, 91 Ark. 527, 121 S.W. 742, at page 745, (1909), the Arkansas Supreme Court stated the rule as follows:

"  *  *  *  On the other hand, a court possesses the power of hearing and determining the question of its jurisdiction, and may, while so doing, require the parties to preserve the status of the subject-matter. U. S. v. De la Maza Arrendondo, 6 Pet. [691] 709, 8 L.Ed. 547; United States v. Shipp, 203 U.S. 563, 27 Sup.Ct. 165, 51 L.Ed. 319. However, when the pleadings show on their face that the court is wholly without jurisdiction of the subject-matter set forth therein, any preliminary order made or final judgment rendered is void. Willeford v. State, 43 Ark. 62."

It is therefore ordered, adjudged and decreed that the contempt order of the 153rd District Court be set aside and that the relators Don R. Edmonds and Fred Sturm be discharged.

WALKER, Justice (dissenting).

I respectfully dissent. It is well settled in this state that a temporary injunction issued by a court which had no jurisdiction of the subject matter is void and may be violated with impunity. Ex parte Barrett, 120 Tex. 311, 37 S.W.2d 741; Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588. I would not extend this rule to temporary restraining orders except in cases where the issuing court could not under any conceivable circumstances have power to grant injunctive relief. For example, a court of equity is utterly without power to interfere with an election during its progress. The election officials should, therefore, be free to disregard a temporary restraining order which seeks to prevent their canvassing the returns or declaring the results of the election.

The present case does not fall within that exception, because the district court clearly has jurisdiction to enjoin a threatened trespass under color of a void condemnation proceeding. Lone Star Gas Co. v. City of Ft. Worth, 128 Tex. 392, 98 S.W.2d 799, 109 A.L.R. 374; Benat v. Dallas County, Tex.Civ.App., 266 S.W. 539 (writ ref.). See also Dallas County v. Plowman, 99 Tex. 509, 91 S.W. 221. In the injunction suit with which we are now concerned, the landowners came to the district court with their verified petition alleging that the condemnation proceedings were void for six different reasons, and at least two of the grounds alleged might well render such proceedings void. For example, the condemnation petition indicated that the City was acting under the power conferred by Article 1107, Vernon's Ann.Tex.Civ.Stat. This statute does not authorize the taking of property for a drainage easement, and there is at least one appellate decision holding that an eminent domain action is void where the condemning authority proceeds under the wrong statute. O'Keefe v. Hudspeth County, Tex.Civ.App., 25 S.W.2d 625 (no writ). I mention this merely to show that the injunction suit was not "obviously and indisputably" outside the jurisdiction of the district court.

When such a petition was presented, it is my opinion that the district court had power to issue a valid and enforceable temporary restraining order to preserve the status quo until there was an opportunity to determine whether it had jurisdiction over the subject matter. That determination can and should be made at the hearing on the temporary injunction. If the court then erroneously concludes that it has jurisdiction, the party enjoined is free to violate the temporary injunction if he desires to do so.

As indicated by the majority opinion, the courts of other jurisdictions recognize that the orderly administration of justice re-

quires that a court have a reasonable opportunity to determine its own jurisdiction. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L. Ed. 884; United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319; Smotherman v. United States, 10th Cir., 186 F.2d 676. In Aladdin Industries, Inc. v. Associated Transport, Inc., 45 Tenn.App. 329, 323 S.W.2d 222 (cer. den. 361 U.S. 865, 80 S.Ct. 117, 4 L.Ed.2d 104), certain shippers were granted a temporary injunction requiring various motor carriers to continue their customary service. The service had been discontinued because the drivers refused to cross picket lines. It was contended in a subsequent contempt proceeding that those who violated the injunction could not be held in contempt because the issuing court had no jurisdiction of the subject matter. In rejecting this argument, the appellate court said:

"But irrespective of whether he had jurisdiction in the sense that he could have entered final decrees that would have ultimately been held free from error, he had jurisdiction to determine all the issues, including that of his own jurisdiction, and to grant a temporary injunction to preserve the *status quo* pending such determination. And pending such determination no person was at liberty to defy the court or to aid any party defendant in a breach of the injunction."

The courts have also said by way of dictum in these cases that the result would be different if the question of jurisdiction were frivolous or not substantial, but the decisions in which contempt convictions have been set aside on that ground involved temporary injunctions rather than temporary restraining orders. Pitcock v. State, 91 Ark. 527, 121 S.W. 742; Leeman v. Vocelka, 149 Neb. 702, 32 N.W.2d 274. My principal difference with the majority in the present case relates to the scope of this exception as applied to a temporary restraining order. We have already extended the exception beyond all reason where the violation of a temporary injunction is charged. The jurisdictional problem may be so difficult that able judges disagree sharply as to its solution. But when a court of last resort finally determines, perhaps after weeks of research and reflection, that the court issuing the temporary injunction had no jurisdiction to do so, we hold that the parties were free to violate its order from the outset.

That is not the situation which the courts have in mind when they speak of a frivolous question of jurisdiction. The scope of the exception they recognize was plainly defined by Mr. Justice Frankfurter as follows:

"Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may an order issued by a court be disobeyed and treated as though it were a letter to a newspaper. Short of an indisputable want of authority on the part of a court, the very existence of a court presupposes its power to entertain a controversy, if only to decide, after deliberation, that it has no power over the particular controversy. Whether a defendant may be brought to the bar of justice is not for the defendant himself to decide." United States v. United Mine Workers of America, supra.

In my opinion we should narrow rather than extend this exception where violation of a temporary restraining order is charged. There is no good reason for saying that our more liberal rule applicable to temporary injunctions must necessarily be applied to temporary restraining orders. A temporary injunction is entered after a hearing at which both parties may introduce evidence and present their legal contentions, and it remains in effect pending a trial on the merits. If the court erroneously concludes that it has jurisdiction after this opportunity to ascertain the facts and investigate the

law, there is some basis for holding that the parties may disregard the temporary injunction without waiting for the same to be set aside on appeal.

A temporary restraining order is quite different. It is issued without notice or hearing to prevent immediate and irreparable damage. Under the provisions of Rule 680, Texas Rules of Civil Procedure, it may remain in force for an initial period of not more than ten days and may be extended only for a like period upon a showing of good cause or for a longer period by agreement of the party against whom it is directed. A motion to dissolve may be heard on two days' or even less notice to the party obtaining the restraining order. It is not unreasonable then to require that the order be observed during the relatively brief period allowed the court for determining its own jurisdiction. Certainly the danger of irreparable and unlawful damage to the plaintiff outweighs whatever inconvenience the defendant might suffer as a result of the delay.

The relators in this case proceeded to render the entire controversy moot without suggesting to the district court that it might not have jurisdiction or giving the court an opportunity to pass on the contentions they now urge. Any rule which encourages conduct of that sort not only fosters disrespect for the law and the judicial process but also hampers the courts in their efforts to protect property and rights from unlawful invasion. If the drainage easements had run through the Vincent home and it later developed that the condemnation proceeding was void and that the district court did have jurisdiction, relators could have been held in contempt but that would be little comfort to those whose home had been destroyed. Whenever "a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." Gompers v. Buck's

Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797. I would remand relators to custody.

CALVERT, C. J., and STEAKLEY and GREENHILL, JJ., join in this dissent.